EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
MIGUEL ROSARIO TORRES, acusado y apelante.

Numero: CR-73-38        Resuelto: 18 de diciembre de 1973

*Nora L. Rodríguez,* abogada del acusado; *Myriam Naveira de
Rodón, Procuradora General, Carmen Celinda Ríos* y *Magda
Haidar de Martí, Procuradoras Generales Auxiliares,* aboga-
das de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del
Tribunal.

La persecución de los delitos de la época contemporánea
como el tráfico de narcóticos, la bolita y las distintas prácticas
de terrorismo ha hecho necesario utilizar el agente encubierto
e informadores pagados para obtener evidencia incrimina-
toria contra este tipo de delincuentes. Se ha investido al
agente encubierto de extraordinario poder sobre la libertad
de los seres humanos en quienes recaiga su acusación, exten-
diéndole una credibilidad sin precedentes a su testimonio aun
cuando falte la más insignificante corroboración con evidencia
material. (1)

_____

(1) Rehusamos intervenir con la apreciación de la prueba por el tri-
bunal de instancia, entre otros, en *Pueblo* v. *Ramírez Rodríguez,* 85 D.P.R.
446 *(per curiam)* (1962); *Pueblo* v. *Méndez Feliciano,* 90 D.P.R. 449 *(per*

Bien pronto surgió a la luz la corrupción e indignidad de agentes que fabricaron casos y se apropiaron los fondos del erario público que se suponía utilizaran en la compra de drogas. Muy poca protección tenían en la ley los ciudadanos falsamente acusados. Algunos tuvieron la suerte de que los propios fiscales que honran su ministerio descubrieran la podredumbre y pidieran el archivo de los casos; y alguno que otro tuvo el beneficio de un juez alerta y acuciador; los menos allegaron los medios de producir una coartada inexpugnable contra la patraña vestida con clámide oficial. Sin duda el legislador tuvo en mente esta tenebrosa amenaza a la limpieza e integridad del proceso judicial cuando insertó en la ley el Art. 523 (24 L.P.R.A. sec. 2523, Ley de Sustancias Controladas) que exige:

"Todo personal de investigaciones que intervenga o participe como encubierto en una transacción de venta de droga y sustancias controladas bajo las disposiciones de este Capítulo, deberá prestar ante un Fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado la transacción de venta, una declaración jurada sobre su participación en la misma y los hechos pertinentes a ésta, a menos que se demuestre justa causa para una demora en someterla dentro del término antes indicado.

Cuando el Tribunal determinare en la vista preliminar que dicha declaración jurada no fue prestada, o que habiéndose prestado fuera del término de 120 horas no hubo justa causa para la dilación ni dicha declaración jurada ni el testimonio del agente encubierto podrán ser presentados en evidencia."

Pero vigente o no esta disposición, para adjudicar credibilidad en casos de esta naturaleza, no hay necesidad de acción por la Legislatura como no la hubo para anular allanamientos y registros en que faltaba contemporaneidad entre las observa-

*curiam*) (1964); *Pueblo* v. *Nazario*, 87 D.P.R. 130 (Belaval, J., 1963); *Pueblo* v. *Muñiz*, 86 D.P.R. 553 (*per curiam*) (1962); *Pueblo* v. *Seda*, 82 D.P.R. 719 (Blanco Lugo, J., 1961); *Pueblo* v. *Pérez Méndez*, 83 D.P.R. 228 (Blanco Lugo, J., 1961); *Pueblo* v. *Belén*, 96 D.P.R. 669 (*per curiam*) (1968); *Pueblo* v. *Rivera*, 96 D.P.R. 629 (*per curiam*) (1968); *Pueblo* v. *Figueroa Santiago*, 93 D.P.R. 154 (*per curiam*) (1966).

ciones del declarante en el afidávit para obtener la orden y la fecha de expedición de ésta. *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19 (Dávila, J., 1964); como tampoco hubo necesidad de legislar para descartar como indigna de crédito evidencia producida en declaración jurada seis meses después de realizada una venta de bolita, situación sobre la cual se expresó este Tribunal:

"... ¿Qué justificación existe para esta demora? Ninguna se ofrece. No hay duda de que si la declaración se hubiese prestado inmediatamente la garantía de veracidad del testimonio del agente sería mayor y más confiable. No puede aducirse que con ello se pone en peligro la efectividad de la investigación confidencial que se está realizando pues en forma alguna se revela la identidad del encubierto ante los posibles infractores de la ley en la zona en que se realiza la investigación. Insistimos, ¿por qué esta tardanza? ¿No es preferible que el testimonio se produzca cuando los hechos están más frescos en la memoria, sin que se tenga que depender casi exclusivamente de unos apuntes que tampoco se presentan luego?

Analizando el contenido del testimonio prestado por el agente se observará de inmediato que se reduce a los particulares mínimos necesarios para establecer la infracción. Precisamente debido a la situación en que se coloca el acusado es necesario que estos particulares se rodeen de ciertos detalles para que se coloque al juzgador en posición de conferirle a ese testimonio el grado óptimo de credibilidad." *Pueblo* v. *Ayala Ruiz,* 93 D.P.R. 704, 707–8; (Blanco Lugo, J., 1966).

En *Pueblo* v. *Ayala Ruiz,* 93 D.P.R. 704 (1966), expresamos nuestra preocupación por la forma en que se instrumentaban por la policía las investigaciones en que intervenían agentes encubiertos, y alertamos sobre la necesidad de mejorar el método de investigación para evitar que la ciudadanía pierda la confianza en la justicia y derive la impresión de que se sanciona el encausamiento de determinadas personas a quienes se tiene reputadas como inveterados infractores de la ley (*crime by reputation*)." *Pueblo* v. *Soto Zaragoza,* 94 D.P.R. 350, 352 (Blanco Lugo, J., 1967).

El agente estuvo realizando labor de encubierto en persecución del tráfico de drogas en el sector de la Parada 20, Santurce, desde principios de agosto hasta la primera quincena de diciembre de 1971 (T.E. pág. 19). Su táctica consistía en solicitar que le vendieran heroína por la cual pagaba simulando ser un adicto. Durante ese período de 4 meses declara primero haber realizado nueve o diez transacciones de compraventa (T.E. pág. 20), y luego dice fueron diez u once (T.E. pág. 22). No conocía al acusado-apelante con quien intervino una sola vez en la siguiente forma: le entregó $25.00 a un tal Papo a quien conocía como traficante, para comprar droga; éste lo llevó donde el apelante Rosario quien estuvo conforme en el precio de $25.00 por 10 "bolsas"[2] y mandó a Papo a "buscar el material a la casa." Que éste desapareció y regresó al rato con un sobre amarillo que le entregó al acusado quien sacó "algo" del sobre que no puede precisar el encubierto y se lo echó en el bolsillo izquierdo, devolviendo el sobre a Papo quien lo entregó al agente. (T.E. págs. 13–15.) El sobre contenía el material solicitado.

El único detalle que aparentemente no pudo reconstruir el testigo policía fue el "algo" que en su inmediata presencia, a las 3:30 de la tarde (T.E. pág. 18) el apelante saca del sobre y se echa al bolsillo. No concebimos que entre diez u once transacciones pueda el testigo agente reconstruir con fidelidad sin el auxilio de una declaración jurada hecha a raíz de la intervención con el apelante, la participación de éste en una transacción por la que se le impusieron sentencias concurrentes de 5 a 7 años de presidio en cargos de posesión y venta.[3] Es palpable la insuficiencia de la prueba para sostener el cargo de transportación (*Pueblo* v. *Cruz*, 101

---

[2] Sólo dos *decks* dieron resultado positivo de heroína.

[3] Fue absuelto por el tribunal de instancia en el tercer cargo de la acusación que lo es por transportación. (T.E. pág. 32.) Faltó suficiente precisión en la imposición de sentencia (T.E. pág. 34) que dio lugar a error en la minuta de 10 de mayo de 1972 en cuanto al cargo del cual fue exonerado.

D.P.R. 803 (1973), pero ahora nos dirigimos a la ausencia de confiabilidad en la declaración del agente secreto.

Habiendo ocurrido los hechos el 23 de agosto de 1971 según el relato del agente encubierto, no es hasta el 21 de enero de 1972 que éste prestó declaración jurada sobre los mismos al fiscal.

La razón que ofrece el agente para su tardanza de 5 meses en revelar la transacción es de una falsedad transparente. Dice que de haber prestado la declaración jurada antes del 21 de enero de 1972 (su asignación había terminado a principios de diciembre de 1971) se hubiese expedido orden de arresto y su vida corría peligro. ¿Es ésta una imputación al Fiscal de que divulgaría antes de tiempo la secretividad del sumario de investigación? ¿O se debe a la ignorancia de que no puede haber orden de arresto hasta que el encubierto declare ante un magistrado? ¿O a la final e inaceptable ignorancia en su oficio de agente secreto de la práctica seguida de no obtener las órdenes de arresto hasta terminada la misión investigativa del encubierto, y sólo minutos antes de iniciar la redada de arrestos? No hay modo de reconciliar su falta de confianza en el fiscal de Distrito a quien niega una declaración jurada, con la confianza en su superior a quien dice haber entregado la evidencia material el mismo día. No es este el caso en que el agente ignora que lo propio es dar en breve plazo una declaración al fiscal y de buena fe cree que ha cumplido con entregar la evidencia en el cuartel. Es el caso del que, sabedor de la práctica correcta, aduce excusas inverosímiles y falaces por no haber suministrado la declaración jurada, hecho más que suficiente para matizar todo su testimonio en juicio de falto de credibilidad.

Estamos plenamente enterados de la gran utilidad del agente encubierto que se adentra en el corazón mismo de la conspiración y penetra los más oscuros recintos del crimen organizado y con gran exposición de su vida saca los infractores de la sombra y clandestinidad para traerlos a responder

por sus actos en sala de justicia. No estamos, por tanto, preconizando, ni siquiera alentando el abandono de este método de investigación y procesamiento. (⁴) Confiamos en que los hombres seleccionados para esta labor sean de integridad sin tacha. Pero habida cuenta de la enorme influencia que sobre el destino del encausado puede generar el testimonio del

(⁴) Nuestra Asamblea Legislativa ha dado especial atención a la erosión de la libertad y a los principios de debido proceso tratados en esta opinión. En el Informe de la Comisión de lo Jurídico Penal del Senado, al cabo de vistas públicas celebradas en septiembre de 1970 se hacen las siguientes críticas y recomendaciones:

"2. Las reglas de evidencia actualmente vigentes no requieren corroboración de la declaración de un agente encubierto en un proceso criminal contra una persona acusada de violar la Ley de Narcóticos de Puerto Rico o la Ley de la Bolita. Hasta hace algunos años era difícil, si no imposible, para los acusados en estos casos poder presentar una defensa adecuada, cuando había transcurrido un término considerable desde la fecha de la supuesta violación hasta el momento del arresto.

"Hubo ocasiones en que transcurrieron once meses y medio entre una fecha y otra y a pesar de la posición de indefensión en que se situaba el acusado, bastaba la declaración del agente, la cual de ser creída, como ocurría casi siempre, resultaba en una convicción para la persona, quien no podía recordar, por el tiempo transcurrido, en donde estaba el día y la hora de los supuestos hechos.

"El caso de *Pueblo* vs. *Ayala Ruiz*, resuelto por el Tribunal Supremo de Puerto Rico en 1966, vino a aliviar un poco esta situación injusta para los acusados al establecer ciertos requisitos o guías mínimas en cuanto a los detalles que debería cubrir el testimonio de un agente encubierto, si su declaración ha de merecer crédito, tratando así de garantizar los procedimientos criminales en aquellos casos en que el único testigo del delito imputado es un agente encubierto. Pero, a pesar de esta decisión judicial, no se restableció el equilibrio que debe existir entre la presunción de inocencia del acusado y la ventaja obvia en que se coloca el Ministerio Fiscal en la presentación de su prueba que, por lo general, descansa en la sola declaración de un agente encubierto.

"Aunque reconocemos la importancia y necesidad de la institución del agente encubierto en la persecución del tráfico ilegal de drogas narcóticas y del juego de la bolita, se hace necesario reglamentar la misma de tal forma que, al mismo tiempo que se mejoren las técnicas de entrenamiento y de equipo de las personas que van a servir como agentes encubiertos, se establezca un mecanismo legal que tienda a exigir la presentación de una prueba más confiable contra las personas acusadas.

"La Comisión desea señalar, a los efectos de la precedente recomendación, que en la pasada Sesión Ordinaria de la Asamblea Legislativa, el Senado de Puerto Rico aprobó el P. de S. 585, presentado por los Sena-

agente, en reverencia a la libertad de los seres humanos con quienes interviene, se impone una aumentada exigencia y un mayor rigor en la estimación por las cortes de las actuaciones del agente encubierto. La triste experiencia con agentes inescrupulosos y prevaricadores ha puesto toda la organización bajo severa evaluación y se hace necesario elevar las normas mínimas de credibilidad. De lo contrario degradaríamos la libertad.

Erró el tribunal de instancia en la apreciación de la prueba *por lo que su sentencia debe ser revocada y el apelante absuelto.*

El Juez Asociado Señor Rigau concurre en el resultado.

---

dores Alemañy Fernández y Rodríguez Torres, el cual enmienda el Artículo 520 del Código de Enjuiciamiento Civil con el fin de disponer que 'el testimonio prestado en juicio por un agente encubierto deberá considerarse con mayor grado de cautela y precaución en aquellos casos donde el tiempo transcurrido entre la fecha de los hechos que se le imputan al acusado y su arresto o donde las circunstancias envueltas en el caso, no permitan al acusado impugnar el testimonio de dicho agente. (Nota: Se refiere a la impugnación del testigo mediante evidencia contradictoria o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala, o mediante evidencia de convicción por delito grave.) En casos criminales, el jurado será instruído al respecto.' " *Revista de Derechos Humanos*, Vol. 1 Núm. 2, Junio, 1971, págs. 88–89.