El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
El presente recurso de certiorari nos brinda la oportuni-dad de examinar la naturaleza y alcance de las declaracio-nes juradas que autorizan los fiscales dentro de sus funcio-nes ministeriales. Ello, a la luz de la incompatibilidad de funciones establecida en la Ley Núm. 205 de 9 de agosto de 2004, según enmendada, conocida como Ley Orgánica del Departamento de Justicia, 3 L.P.R.A. sec. 291 et seq., y en la Ley Núm. 7 de 2 de julio de 1987, según enmendada, conocida como Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2001 et seq. Específicamente, debemos resolver si tres declaraciones juradas —prestadas por determinados agentes encubiertos durante el curso de una investigación— son admisibles en evidencia a pesar que dos de ellas no fueron firmadas por el fiscal autorizante y en la restante no se consignó la fecha y hora de autorización. A continuación esbozamos los antecedentes fácticos de mayor relevancia a la controversia que nos ocupa.
*784 I
A raíz de una investigación realizada por el Negociado de Investigaciones Especiales del Departamento de Justi-cia, el 31 de octubre de 2008 el Ministerio Público presentó varias denuncias contra el Sr. José Garay López, el Sr. Leonardo de Jesús Valentín y el Sr. Edgar Álvarez Pérez. En ellas les imputó la comisión del delito de soborno, 33 L.P.R.A. see. 4890; infracciones al Art. 3.2(c) de la Ley Núm. 12 de 24 de julio de 1985, según enmendada, cono-cida como Ley de Etica Gubernamental, 3 L.P.R.A. sec. 1822; violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Con-troladas de Puerto Rico, 24 L.P.R.A. see. 2101 et seq., y varias infracciones a la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como Ley de Armas de Puerto Rico. Las denuncias fueron sometidas ante el Tribunal de Primera Instancia en ausencia de los peticionarios.
Luego que el foro primario encontrara causa para el arresto de los imputados, el 12 de junio de 2009 comenzó la celebración de la Vista Preliminar. Durante esta vista el Ministerio Público presentó como prueba las declaraciones juradas de los agentes encubiertos José A. Rivera Avilés, Gretchen Castro Parsons y Gabriel García Guevara. En estas declaraciones, prestadas el 8 de abril de 2008, se de-tallaron los hechos pertinentes sobre la comisión de los de-litos imputados.
Acto seguido, los imputados objetaron la presentación de las declaraciones juradas. Alegaron que estas incum-plían con los requisitos establecidos en la Ley Notarial de Puerto Rico y en su Reglamento, 4 L.P.R.A. sec. 2101 et seq. En específico, adujeron que dos de las tres declaraciones juradas no fueron firmadas por el fiscal autorizante y, en cuanto a la declaración jurada restante, señalaron que esta —aunque fue firmada— no tenía la fecha. Consecuente- *785 mente, argüyeron que las declaraciones juradas eran nu-las, ya que los errores de los cuales adolecían constituían defectos no subsanables, conforme a lo establecido en la ley notarial y su reglamento. Puntualizaron que las referidas declaraciones eran inadmisibles en evidencia, puesto que no habían sido prestadas válidamente dentro del término de 120 horas dispuesto en el Art. 523 de la Ley de Sustan-cias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2523.
El Ministerio Público, por su parte, replicó a lo alegado por los imputados. A esos efectos, luego de presentar como testigo al fiscal Miguel A. López Birriel —funcionario pú-blico que autorizó las declaraciones juradas en controver-sia— así como las copias certificadas de su Registro e In-forme Mensual de Declaraciones Juradas, el Ministerio Público adujo que en horas de la mañana del 8 de abril de 2009 el fiscal López Birriel les tomó juramento a los agen-tes encubiertos involucrados en la investigación criminal que dio origen al encausamiento criminal de autos. Por ello, contrario a lo alegado por los imputados, el Ministerio Público argumentó que los errores señalados eran subsa-nables mediante la presentación de prueba adicional y que las referidas declaraciones debían ser admitidas en evidencia.
Luego de evaluar la prueba presentada y de analizar los argumentos esgrimidos por ambas partes, el 23 de junio de 2008 el Tribunal de Primera Instancia emitió una resolución. En su dictamen, el foro primario indicó que nin-guna de las declaraciones juradas presentadas por el Mi-nisterio Público cumplió con las formalidades exigidas por la Ley Notarial de Puerto Rico y su reglamento, y que por ello adolecían de defectos no subsanables. Consecuente-mente, el foro de instancia decretó su nulidad e indicó que eran inadmisibles en evidencia de acuerdo con el Art. 523 de la Ley de Sustancias Controladas, supra.
Inconforme, el Ministerio Público presentó un recurso de certiorari ante el Tribunal de Apelaciones. En el recurso *786 señaló que el Tribunal de Primera Instancia incidió al resolver que las declaraciones juradas eran nulas por adole-cer de defectos no subsanables y que ello acarreaba su ex-clusión automática como evidencia sustantiva contra los imputados. Ello, según lo establecido en la Ley Notarial de Puerto Rico, su reglamento, y el Art. 523 de la Ley de Sus-tancias Controladas de Puerto Rico, supra.
Examinados los planteamientos de las partes, el 23 de septiembre de 2009 el Tribunal de Apelaciones dictó sen-tencia y revocó el dictamen recurrido. Al así hacerlo acotó que las tres declaraciones juradas en controversia, a pesar de que adolecían de defectos, fueron autorizadas dentro de los deberes ministeriales del fiscal y no según sus deberes como notario. En atención a ello, el foro apelativo interme-dio razonó que los defectos señalados no acarreaban la ex-clusión automática de las referidas declaraciones y que es-tas no eran nulas puesto que los defectos eran sub-sanables.
Cónsono con lo anterior, el Tribunal de Apelaciones ex-presó que los defectos señalados por los imputados fueron subsanados mediante la presentación del testimonio del fiscal López Birriel, así como las copias certificadas de su Registro e Informe Mensual de Declaraciones Juradas. En vista de ello, el foro apelativo intermedio concluyó que el Tribunal de Primera Instancia incidió al no admitir en evi-dencia las referidas declaraciones, ya que estas fueron au-torizadas dentro del término establecido en la Ley de Sus-tancias Controladas de Puerto Rico.
En desacuerdo con ese dictamen, el 26 de octubre de 2009 el señor Alvarez Pérez presentó un recurso de certio-rari ante este Tribunal y señala la comisión del error si-guiente:
Erró el Tribunal de Apelaciones al concluir que no procede la exclusión de las declaraciones juradas, ya que las omisiones de firmar y hacer constar la fecha de su otorgamiento se hicieron dentro de los deberes del cargo de fiscal y no en calidad de notario. Petición de certiorari, pág. 3.
*787 Posteriormente, el 9 de abril de 2010 emitimos una re-solución mediante la cual expedimos el auto de certiorari presentado por el imputado. Ambas partes han presentado sus respectivos alegatos. Por ello, contando con su compa-recencia, procedemos a resolver.
II
A. La figura del agente encubierto
La ola de criminalidad que fustiga a Puerto Rico constituye una de las preocupaciones mayores de nuestra ciudadanía. Uno de los males que debemos de tratar de detectar tempra-namente y, si fuera posible, erradicar, es aquél del negocio ilícito de la venta de narcóticos. El uso de los cuales no sólo está destruyendo, literalmente, a la juventud, sino que tam-bién propicia la comisión de otros delitos tales como robos, escalamientos, asesinatos, prostitución, violaciones, y otros. La población debe estar consciente que el adicto es capaz de cualquier cosa en su desesperación por conseguir dinero para comprar la droga.
La imperiosa necesidad que tiene Puerto Rico de tratar de eliminar este mal de la sociedad, y en vista de que dichas transacciones, por lo general, se llevan a cabo en la secretivi-dad, es que surgió la práctica de la utilización por parte de los organismos gubernamentales a cargo de hacer cumplir las le-yes, de los agentes encubiertos. Estos, como es sabido, son agentes de la Policía de Puerto Rico que, haciéndose pasar por traficantes o adictos, se “infiltran en esta subcultura” que des-afortunadamente existe en nuestra sociedad. El agente se gana la confianza de esos ciudadanos con el propósito de acu-mular evidencia en contra de éstos. “El agente encubierto es un arma de identificación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método”. (Escolios omitidos.) I. Pérez Vega, Las dos caras del agente encubierto, 43 Rev. Jur. U.I.P.R. 137, 137 — 138 (2008).
El agente encubierto es un policía o funcionario público que se infiltra en organizaciones o grupos de personas que operan ilegalmente en el clandestinaje, con el propósito de poder llevar a estos ante el sistema de justicia de nuestro país para que respondan por sus actividades *788 ilegales. En otras palabras, el agente encubierto se adentra en el corazón mismo de la conspiración y penetra en los más oscuros recintos del crimen organizado. Ello se logra cuando el agente se gana la confianza de estas personas y les hace creer que es uno de ellos, proceso que, de ordinario, toma un período de tiempo considerable. Véanse: Valle v. E.L.A., 157 D.P.R. 1 (2002); Pueblo v. Cruz Calderón, 156 D.P.R. 61 (2002); Pueblo v. Almodóvar, 109 D.P.R. 117 (1979); Pueblo v. Seda, 82 D.P.R. 719 (1961).
En ocasiones, a los agentes encubiertos les resulta fácil poder describir y precisar los nombres verdaderos y direc-ciones donde pueden ser localizadas las personas que lle-van a cabo la conducta criminal clandestina. En otras ins-tancias, sin embargo, esto les resulta imposible y solo pueden identificar a dichas personas mediante una des-cripción física certera o por sus apodos. Valle v. E.L.A., supra, pág. 22. Cuando esto ocurre los miembros de la agen-cia investigadora tienen que asegurarse de tomar todos los pasos necesarios para poder identificar, de forma certera y correcta, al delincuente que llevó a cabo la transacción de-lictiva con el agente encubierto. Existen varias formas de hacerlo. Por ejemplo, los agentes supervisores del agente encubierto pueden: tomar fotos —a distancia— de la persona involucrada en el acto criminal; seguir al delincuente hasta su residencia y lugar de trabajo; lograr que el agente encubierto identifique a la persona; presentar como testigo al agente encubierto para que este identifique en sala al delincuente. Id.
Es evidente que esta práctica de investigación criminal ha resultado de gran beneficio para Puerto Rico. Ha permitido acusar y encarcelar a miles de traficantes de drogas durante los últimos años. Empero, la utilización de los agentes encubiertos en la guerra contra el crimen no deja de ser un tanto inquietante. Ello implica que un ciudadano puede ser acusado, condenado y sentenciado a prisión única y exclusivamente sobre la base del testimonio *789 del agente encubierto, el cual —en muchas ocasiones— no ha sido corroborado en cuanto a los hechos esenciales. Pueblo v. Acevedo Estrada, 150 D.P.R. 84 (2000); Pueblo v. Rivera Rodríguez, 123 D.P.R. 467 (1989); Pueblo v. Sanabria Pérez, 113 D.P.R. 694 (1983). Por tal razón, el testimonio de un agente encubierto debe ser examinado y escudriñado minuciosamente. Pueblo v. Soto Zaragoza, 94 D.P.R. 350 (1967). De esta forma se evita que sea estereotipado y que la libertad de personas inocentes sea puesta en riesgo. Pueblo v. Almodovar, supra. Véanse, además: I.R. Valldejuli Pérez, El agente encubierto y el Tribunal Supremo de Puerto Rico, 44 Rev. Jur. U.P.R. 143 (1975); C. López-Baralt Negrón, Posición del Tribunal Supremo frente al testimonio único del agente encubierto, 37 Rev. Jur. U.P.R. 583 (1968); R.C. Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs, 60 Yale L.J. 1091 (1951).
En fin, habida cuenta de la enorme influencia que sobre el destino del encausado puede generar el testimonio del agente encubierto, y por respeto a la libertad de los seres humanos con quienes interviene, los tribunales deben estimar con mayor exigencia y rigor las actuaciones del agente encubierto. Pueblo v. Rosario Torres, 101 D.P.R. 840 (1973).
B. Artículo 523 de la Ley de Sustancias Controladas de Puerto Rico
En consideración al marco jurídico antes enunciado, y debido a que la memoria de los hechos delictivos observados y presenciados se deteriora con el transcurso del tiempo, el legislador adoptó el Art. 523 de la Ley de Sustancias Controladas de Puerto Rico, supra. Así, se estableció una precaución temporal de confiabilidad para las declaraciones hechas por los agentes encubiertos producto de las investigaciones y operaciones realizadas. A esos efectos, el citado artículo prescribe lo siguiente:
*790 Todo personal de investigaciones que intervenga o participe como encubierto en una transacción de venta de drogas y sus-tancias controladas bajo las disposiciones de este capítulo, de-berá prestar ante un Fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado la transacción de venta, una declaración jurada sobre su participación en la misma y los hechos pertinentes a ésta, a menos que se de-muestre justa causa para una demora en someterla dentro del término antes indicado.
Cuando el tribunal determinare en la vista preliminar que dicha declaración jurada no fue prestada, o que habiéndose prestado fuera del término de 120 horas no hubo justa causa para la dilación ni dicha declaración jurada ni el testimonio del agente encubierto podrán ser presentados en evidencia.
En la determinación de justa causa se tomará en considera-ción, entre otros factores, el que la investigación que se lleve a cabo no hubiere concluido dentro del término no mayor de 120 horas antes indicado. 24 L.P.R.A. sec. 2523.
Como podemos apreciar, el referido artículo de la Ley de Sustancias Controladas de Puerto Rico exige que las decla-raciones juradas prestadas por los agentes encubiertos so-bre la actividad criminal sean autorizadas por el funciona-rio público correspondiente —quien en la mayoría de las ocasiones es un fiscal— dentro de las 120 horas siguientes a la consumación de la transacción ilegal. De estas no pres-tarse dentro del tiempo antes mencionado, el testimonio del agente encubierto no podrá ser presentado en evidencia.
Ahora bien, en las instancias en que el funcionario pú-blico correspondiente autorice las declaraciones fuera del término de 120 horas establecido por el Art. 523 de la Ley de Sustancias Controladas de Puerto Rico, supra, el Minis-terio Público deberá probar justa causa para la demora como condición para que sean admitidas en evidencia. Véanse: Pueblo v. Colón Ramos, 115 D.P.R. 357 (1984); Pueblo v. Rosario Torres, supra.
C. Incompatibilidad entre funciones: Ministerio Público y Notariado
Como es sabido, el notario es el profesional de Derecho que ejerce una función pública, autorizado para dar *791 fe y autenticidad conforme a las leyes de los negocios jurí-dicos y demás actos y hechos extrajudiciales que ante él se realicen sin perjuicio de lo dispuesto en las leyes especiales. 4 L.P.R.A. see. 2002. “Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirles autoridad a los mismos.” Id. En virtud de estas responsabilidades es que en la esfera de los hechos el no-tario da fe de lo que ve, oye y percibe por sus sentidos. Como jurista autentica y formula un juicio de certeza que nutre de fuerza probatoria las declaraciones de voluntad de las partes en instrumentos y documentos públicos re-dactados conforme a las leyes. In re Maldonado Rivera, 103 D.P.R. 523 (1975); S. Torres Peralta, El Derecho Notarial Puertorriqueño, ed. especial, San Juan, Pubs. STP, 1995, pág. 1.4.
Además, el notario autorizado puede ejercer su profesión dentro de toda la jurisdicción de Puerto Rico. En esa función disfrutará de plena autonomía e independencia, la ejercerá con imparcialidad, y estará bajo la dirección administrativa de este Tribunal por conducto de la Oficina de Inspección de Notarías. 4 L.P.R.A. sec. 2003.
Sin embargo, la Ley Notarial de Puerto Rico establece que el ejercicio de la notaría es incompatible con cualquier otro cargo público cuando media una prohibición a tales fines. 4 L.P.R.A. sec. 2004. Véase, además, In re Corona Muñoz 1,141 D.P.R. 640, 646-647 (1996). A estos efectos, “[l]a doctrina reconoce que la incompatibilidad para ocupar dos (2) cargos públicos simultáneamente puede ser de derecho o de hecho. La primera, la incompatibilidad legal, presupone 'la existencia de alguna norma legal que establezca la prohibición del ejercicio de la abogacía y, a la vez, otra actividad, función o cargo’ ”. En otras palabras, “[p]or disposición expresa de ley se prohíbe el desempeño simultáneo de dos (2) puestos”. (Énfasis suprimido.) Id., pág. 647, citando a R. Bielsa, La Abogacía, 3ra ed., Buenos *792 Aires, Ed. Abeledo-Perrot, 1960, pág. 181. La segunda, la incompatibilidad fáctica, se manifiesta “cuando ambos puestos tienen incompatibilidades o conflictos más o menos permanentes en sus deberes, no meramente casuales”. Id., pág. 647. Véase Pueblo ex reí Arjona v. Landrón, 57 D.P.R. 67, 70 (1940).
Cónsono con lo anterior, el Art. 27 de la Ley Orgánica del Departamento de Justicia, supra, señala que “[l]a práctica privada de la abogacía y la notaría es incompatible con el puesto regular de abogado y fiscal del Departamento”. 3 L.P.R.A. sec. 293f. Esta incompatibilidad legal es reiterada —de forma específica— en el Art. 70 del referido estatuto. “Se prohíbe a los fiscales y procuradores el ejercicio privado de la abogacía y notaría mientras ocupen sus respectivos cargos.” 3 L.P.R.A. sec. 294v.
D. Autoridad limitada de los fiscales para ejercer funciones notariales
Como mencionamos, existe una clara incompatibilidad legal entre el cargo de fiscal y la profesión de notario. Ahora bien, por disposición especial de ley, a los funciona-rios públicos y empleados del Departamento de Justicia se les permite tomar declaraciones juradas en el curso de sus investigaciones y trabajos ministeriales.
Así, el Art. 27 de la Ley Orgánica del Departamento de Justicia, supra, especifica que “un abogado podrá ejercer la práctica notarial como parte de las funciones de su cargo, siempre que medie la autorización por escrito del Secretario”. 3 L.PR.A. sec. 293f. De igual forma, el Art. 11 del referido estatuto autoriza a los funcionarios públicos del Departamento de Justicia a entrevistar testigos y to-marles juramentos y declaraciones. Al así hacerlo, indica que “[e]l Secretario y los funcionarios y empleados en quie-nes delegue, llevarán a cabo las investigaciones que sean necesarias y adecuadas para el ejercicio de las facultades que le concede [esta Ley] y quedan autorizados para entre- *793 vistar a testigos y tomar juramentos y declaraciones”. 3 L.P.R.A. sec. 292h.
La autorización descrita en el párrafo anterior se concretiza en la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, de 12 de marzo de 1903, según enmendada, 4 L.P.R.A. sees. 881-899. Este estatuto también autoriza a los fiscales a tomar declaraciones y affidávits. 4 L.P.R.A. see. 890. A esos fines, la profesora Torres Peralta ha señalado que
Manto los jueces como los fiscales ejercen funciones de na-turaleza notarial, dentro del marco específico de la reglamen-tación particular que les aplica, pero no quedan dentro de la cubierta de la Ley Notarial. Nos explicamos.
El 25 de febrero de 1982, el Tribunal Supremo emitió [una] resolución reglamentando el alcance de la facultad de los jue-ces para autorizar declaraciones y testimonios de autenticidad. Posteriormente, la Legislatura aprobó la [Ley Núm. 77 de 6 de julio de 1985, 4 L.P.R.A. 890, 892a], en la que reitera lo previamente dispuesto en la resolución indicada. El mismo estatuto les reconoce la misma facultad para autorizar testimonios y declaraciones de autenticidad sujetas a los cri-terios ahí indicados a los miembros del ministerio público.
La [Ley Núm. 77, supra], vigente a esta fecha lee:
“Los notarios, los jueces del Tribunal Supremo, los jueces del Tribunal de Primera Instancia, los jueces municipales, los fiscales, los jefes de departamento, los tesoreros municipales podrán autorizar afidávits o declaraciones de autenticidad; pero solamente los notarios podrán autorizarlos cuando se re-fieren a hechos, actos o contratos de mero interés particular”.
Conforme al estatuto indicado, plenamente vigente a esta fecha, los jueces pueden autorizar testimonios y declaraciones de autenticidad en el área de interés público, facultad que suelen ejercer vigorosamente. Por ejemplo, los magistrados to-man juramentos en áreas tales como reconocimiento de hijos, celebración de matrimonios, diligenciamiento de órdenes de allanamiento, entre otros.

Los fiscales, por su parte, ejercen su autoridad para tomar juramentos en el ejercicio de su función investigativa.

Debe quedar claro, sin embargo, que los jueces y fiscales no son notarios públicos. Su función está limitada a tomar testi- *794 monios y declaraciones de autenticidad, dentro del ámbito de la reglamentación vigente. Tal función, en sí delicada, no les convierte en notarios públicos. (Escolio omitido y énfasis suplido.) Torres Peralta, op. cit., págs. 5.8-5.9.
E. Declaraciones juradas bajo la Ley para la Toma y Regis-tro de Declaraciones Juradas, Juramentos y Afirmaciones
La Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, aparte de autorizar a los fiscales a ejercer ciertas funciones notariales, establece los requisitos aplicables a los documentos que se autorizan. Así, el Art. 3 de la referida disposición legal dispone que toda declaración jurada autorizada conforme al referido es-tatuto se hará por escrito y será firmada por el declarante. 4 L.RR.A. see. 883.
Aparte de los requisitos esbozados, la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afir-maciones también impone a los fiscales la obligación de remitir a la oficina del Secretario de Justicia información sobre las declaraciones juradas prestadas ante ellos. 4 L.RR.A. sec. 892a. En específico, dicho estatuto señala que los fiscales tienen que remitir un informe e índice mensual de los testimonios o declaraciones de autenticidad que au-torizan no más tarde del décimo día calendario del mes siguiente al mes informado. 4 L.RR.A. sec. 892a. Este in-forme, además, debe contener el número de orden de cada testimonio o declaración de autenticidad, los nombres de los otorgantes, los nombres de los testigos, la fecha de au-torización y el objeto del acto. Id. El affidávit o declaración que no esté inscrito en el Registro de Declaraciones o in-cluido en el índice correspondiente será nulo. 4 LR.R.A. see. 894.
Incluso, en consecución de las obligaciones impuestas por la Ley para la Toma y Registro de Declaraciones Jura-das, Juramentos y Afirmaciones, el 5 de agosto de 1985 el otrora Secretario de Justicia emitió la Orden Administra- *795 tiva del Departamento de Justicia Núm. 85-06.(1) Esta or-den delimitó el procedimiento que los fiscales deben seguir para la implementación adecuada de los deberes impuestos por la Ley para la Toma y Registro de Declaraciones Jura-das, Juramentos y Afirmaciones. A esos fines, la referida orden apuntala lo siguiente:
Para que haya uniformidad en los procedimientos a seguirse para cumplir con la Ley Número 77, del 6 de julio de 1985, se instruye a los fiscales y procuradoras a observar las siguientes instrucciones:
1. En las declaraciones juradas el fiscal o procuradora deberá incluir, luego de la firma del declarante, lo siguiente:
“Declaración Número _
Jurada y suscrita ante mí por_, de las circunstan-cias personales arriba expresadas, hoy día_ de_ de 19_, a las_(a.m./p.m.)
Cuando se utilicen los formularios de declaraciones juradas ya *796 impresos, bastará con incluir el número de la declaración antes de la nota que aparece en la parte inferior del formulario y llenar los blancos que aparecen en ésta, adicionando la hora en que se toma la declaración jurada.
2.Al abrirse el Registro de Declaraciones Juradas, el fiscal o procuradora lo comenzará con la siguiente nota:
“En cumplimiento de la Ley Número 77, de 6 de julio de 1985, comienza el primer Libro y Registro de Declaraciones Juradas, ante el fiscal que suscribe, en_, Puerto Rico, hoy _ de_ de 19_”
(Estampar sello del Departamento de Justicia)
Firma del Fiscal o Procuradora
3.Las notas en el Registro de Declaraciones seguirán una se-cuencia numérica y se llevarán en la siguiente forma:
Declaración Número_ de fecha__
“A las_(a.m./p.m.) de este día, don (doña)_, de estado civil_, de_ años de edad, residente en_, de ocupación_, suscribe y jura ante mí declaración en relación con la investigación del caso (Nombre del imputado), por el delito de_, hechos cometidos en (fecha)”
(Estampar sello del Departamento de Justicia)
Firma del Fiscal o Procuradora
4. El libro debe abrirse en la fecha en que se juramentó la primera declaración, a partir del 6 de julio de 1985.
5. Las declaraciones juradas grabadas o tomadas en taquigra-fía o estenotipia y luego transcritas a máquina, y certificadas por un taquígrafo o transcriptor, deberán también incluirse en el Registro de Declaraciones Juradas con su número correla-tivo a la fecha y hora en que se toman.
6. Terminado el libro se insertará una nota de cierre que diga:
“Concluye mi primer Registro de Declaraciones Juradas to-madas por mí, que consta de_ folios y_ declaraciones *797 juradas. Este tomo corresponde al período comprendido entre (fecha de la Ira. declaración) y (fecha de última declaración)”.
“En_, Puerto Rico, a_ de_ de 19_”
(Estampar sello del Departamento de Justicia)
Firma del Fiscal o Procuradora
7. No más tarde del quinto día laborable de cada mes, los fiscales y procuradoras someterán al Secretario de Justicia el informe mensual sobre las declaraciones tomadas el mes anterior. Este informe se preparará en el formulario diseñado, en original y copia. El original se enviará al Secretario de Justicia. El fiscal retendrá copia para sus archivos. En caso de no haberse tomado declaración alguna durante el mes, se en-viarán informes negativos. Los fiscales de Distrito y Jefes de Unidades velarán por el fiel cumplimiento de este requisito, en cuanto a los fiscales asignados a sus fiscalías y unidades.
8. La Oficina del Jefe de la División de Investigaciones y Pro-cesamiento Criminal llevará récord de los informes rendidos y los conservará en archivo confidencial. Cualquier solicitud u orden del Tribunal para el descubrimiento de este informe será referida por el Fiscal de Distrito al Secretario de Justicia, por conducto del Jefe de la División.
9. Mensualmente el Jefe de la División informará al Secretario de Justicia el nombre de los fiscales y procuradoras que no cumplan con el requisito de preparación y envío de los infor-mes, para la acción administrativa que el Secretario de Justi-cia entienda procedente.
10. El Departamento de Justicia proveerá un libro encuader-nado con folios numerados para cada fiscal. El libro Registro de Declaraciones Juradas permanecerá en posesión y custodia del Fiscal o Procuradora mientras éste o ésta desempeñe el cargo. Al renunciar, retirarse o cesar en el cargo, hará entrega del libro al Jefe de la División Criminal para custodia perma-nente del mismo.
11. Se proveerán a las Fiscalías y Unidades varios sellos de goma con el sello oficial del Departamento de Justicia para uso de los fiscales y procuradoras en el cumplimiento de la Ley Núm. 77 [, supra,} que exige declaraciones e informes sellados. Los sellos de goma serán controlados por el Fiscal de Distrito o Jefe de Unidad, de tal forma que siempre haya por lo menos un sello disponible para uso de los fiscales y procuradoras en y fuera de horas laborables.
*798 A la luz de la normativa y órdenes administrativas mencionadas, podemos colegir que las declaraciones juradas autorizadas por los funcionarios públicos y empleados del Departamento de Justicia al amparo de la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones deben cumplir con determinados requisitos. A saber, las referidas declaraciones deben ser hechas por escrito(2) y contener: (a) el número de declaración asignado(3) (b) el nombre del declarante(4) (c) la firma del declarante(5) y (d) la fecha y hora en que se autorizaron(6) Además, so pena de nulidad(7) estas declaraciones juradas deberán ser incluidas en el índice mensual e inscritas en el Registro de Declaraciones Juradas correspondiente, ambos preparados por el fiscal autorizante en cumplimiento con el referido estatuto y con las Ordenes Administrativas Número 85-05 y 85-06 reseñadas.
III
En su recurso de certiorari el peticionario aduce que el Tribunal de Apelaciones erró al dictar sentencia, revocar el dictamen emitido por el Tribunal de Primera Instancia y concluir que no procede la exclusión de las declaraciones juradas, ya que estas fueron autorizadas dentro de los de-beres del cargo de fiscal y no en calidad de notario. En específico, el peticionario alega que el foro apelativo inter-medio incidió al razonar que las referidas declaraciones no eran nulas, que los defectos de los cuales adolecen son sub-sanables mediante la presentación de prueba y que la exis- *799 tencia de éstos no acarrea la exclusión automática de las referidas declaraciones. No le asiste la razón.
Un análisis detenido y minucioso de la doctrina jurídica descrita revela, inicialmente, que la facultad de los fiscales para ejercer funciones notariales no proviene de la Ley Notarial de Puerto Rico ni de su reglamento. Más bien, estas funciones son autorizadas —de forma limitada— por la Ley Orgánica del Departamento de Justicia y por la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones.
Incluso, por señalar que todo personal de investigaciones que intervenga o participe como encubierto en una transacción de venta de drogas y sustancias controladas deberá prestar ante un Fiscal una declaración jurada sobre su participación, puede colegirse que el Art. 523 de la Ley de Sustancias Controladas, supra, también faculta a los fiscales a ejercer funciones notariales. Como consecuencia de ello, y como bien razonó el Tribunal de Apelaciones, los empleados y funcionarios públicos del Departamento de Justicia entrevistan testigos, toman juramentos y autorizan declaraciones juradas como parte de sus deberes ministeriales y no en calidad de notarios. Por ende, la Ley Notarial de Puerto Rico y su reglamento no son aplicables al caso de autos.
Del mismo modo, aun cuando las declaraciones juradas en controversia adolecen de defectos significativos —falta de firma del fiscal autorizante y ausencia de fecha y hora de autorización— entendemos que estos constituyen defec-tos subsanables que pueden ser rectificados. Así, contrario a lo alegado por el peticionario, los defectos señalados en el caso de autos no acarrean la exclusión automática de las declaraciones juradas en controversia. En cambio, estas podrán ser admitidas en evidencia si se presenta prueba —testifical, documental o científica— que rectifique los de-fectos señalados y demuestre que el evento o circunstancia en controversia, en efecto, ocurrió. Véanse, además, las Re- *800 glas 901 y 902 de Evidencia, 32 L.P.R.A. Ap. VI. Ello res-ponde a que los únicos defectos que causan la nulidad de las declaraciones juradas que autorizan los funcionarios públicos y empleados del Departamento de Justicia son los contenidos en la See. 8 de la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, supra. Es decir, el no incluir en el índice correspondiente las declaraciones juradas autorizadas, o no inscribirlas en el Registro de Declaraciones Juradas.(8) 4 L.P.R.A. sec. 894.
Además, es menester aclarar que la obligación de los funcionarios públicos y empleados del Departamento de Justicia de firmar las declaraciones juradas que autorizan no está contemplada en la Ley Orgánica del Departamento de Justicia, ni en la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, ni en la Ley de Sustancias Controladas, ni en las Ordenes Administrativas 85-05 y 85-06 antes mencionadas. Este requisito emana, más bien, del propio acto jurídico; de la naturaleza de tomar y autorizar declaraciones juradas y de la importancia de mantener en alto la integridad y transparencia de los procedimientos —en esta ocasión investigativos— que realizan dichos funcionarios y empleados. Precisamente, por esta razón es que deben observar un grado mayor de celo, cuidado y diligencia al ejercer sus funciones ministeriales, y cumplir cabalmente con los requisitos enunciados.
Por ello, colegimos que toda declaración jurada que no sea firmada por el fiscal que la autorice -aunque cumpla con todos los demás requisitos exigidosadolecerá de un defecto subsanable y no podrá ser admitida en evidencia hasta que el defecto sea rectificado. En efecto, en- *801 tendemos que la norma aquí pautada constituye la mejor práctica y es la que le otorga mayor grado de confiabilidad a las funciones notariales limitadas que ejercen los funcio-narios públicos y empleados del Departamento de Justicia a raíz de los estatutos anteriormente señalados.(9)
Así, pues, surge del expediente de autos que las tres declaraciones juradas en controversia fueron prestadas ante el fiscal López Birriel el 8 de abril de 2008 a las 10:30 a.m., 10:40 a.m., y 11:00 a.m., respectivamente. En todas ellas se declaró con lujo de detalles la investigación y ope-ración criminal realizada, la cual comenzó en horas de la mañana del 3 de abril de 2008 y culminó en horas de la tarde del mismo día.(10) Luego, durante la celebración de la vista preliminar, el Ministerio Público presentó como prueba las referidas declaraciones con miras a que fueran admitidas en evidencia. Oportunamente, los imputados impugnaron las declaraciones juradas de los agentes encu-biertos y adujeron que estas eran inadmisibles en eviden-cia debido a que dos de ellas no estaban firmadas y la res-tante no contenía la fecha de autorización, defectos que catalogaron como no subsanables. El Ministerio Público, por su parte, presentó el testimonio del fiscal López Birriel —quien testificó respecto al acto de autorización— y copias certificadas de su Registro de Declaraciones Juradas y de su Informe Mensual.
*802 Es preciso puntualizar que del Registro de Declaracio-nes Juradas se deduce el número de identificación de dichas declaraciones, un resumen de su contenido, el nombre de los declarantes, la fecha y hora en que se autorizaron, y la fecha y hora en que se consumó la transacción de drogas que originó el presente encausamiento criminal. Además, del Informe Mensual, el cual fue remitido a la Oficina del Fiscal General del Departamento de Justicia, surge una lista de las declaraciones juradas que se autorizaron du-rante el mes de abril de 2008. Esta lista contiene el nú-mero de identificación de las declaraciones juradas aquí en controversia, la fecha en que fueron autorizadas, el nombre de los declarantes y una síntesis de la naturaleza de las declaraciones.
En vista de lo anterior, y al igual que el Tribunal de Apelaciones, colegimos que el Ministerio Público presentó suficiente evidencia para subsanar los defectos señalados. El testimonio del fiscal López Birriel sobre las diligencias realizadas para juramentar las respectivas declaraciones y las copias certificadas de su Registro de Declaraciones Ju-radas y de su Informe Mensual constituyen suficiente evi-dencia en derecho que prueba la ocurrencia del acto impug-nado, rectificando así los defectos identificados por los imputados.
Al ser ello así, y razonar que las declaraciones juradas en controversia fueron debidamente autorizadas, es for-zoso concluir que estas fueron prestadas dentro del tér-mino de 120 horas estatuido en el Art. 523 de la Ley de Sustancias Controladas de Puerto Rico, supra. En conclu-sión, el Tribunal de Apelaciones no incidió al resolver como lo hizo y decretar la admisibilidad de las referidas declaraciones.
IV
Por los fundamentos enunciados, procede confirmar la sentencia dictada por el Tribunal de Apelaciones. En con- *803 secuencia, se devuelve el caso de autos al Tribunal de Pri-mera Instancia para la continuación de los procedimientos de la Vista Preliminar conforme con los pronunciamientos vertidos en esta opinión.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión concurrente.

 La Orden Administrativa del Departamento de Justicia Núm. 85-06, de 5 de agosto de 1985, complementa la Orden Administrativa Núm. 85-05, de 18 de julio de 1985. En ésta se atendieron -inicialmente- las obligaciones nacidas de la Ley Núm. 77 de 6 de julio de 1985, la cual enmendó la Ley para la Toma y Registro de Decla-raciones Juradas, Juramentos y Afirmaciones. Por su pertinencia, la reproducimos en su totalidad.
“Con fecha de 6 de julio de 1985 entró en vigor la Ley Núm. 77 que enmienda las Secciones 4, 5, y 6a de la Ley de 12 de marzo de 1908, según enmendada, [conocida como Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones], para requerir de los fiscales, entre otros funcionarios, a llevar un registro de [affidavits] y declaraciones de autenticidad tomadas por los mismos y a rendir un informe.
“Hasta tanto el Departamento de Justicia realice los arreglos pertinentes para la adquisición de los tomos requeridos por la Ley y cualquier otra gestión necesaria para instrumentar sus disposiciones, cada uno de los fiscales deberá dar número correlativo a las declaraciones juradas que hayan tomado a partir de la vigencia de la Ley y a cualquier otra declaración de dicha naturaleza que en lo sucesivo tomen.
“Deberá, asimismo, llevar un registro particular de las declaraciones juradas, haciendo una anotación en el mismo de cada una de tales declaraciones, incluyendo el número, breve nota sobre el asunto donde se informe el nombre de los otorgantes y la naturaleza del acto autenticado, fecha en que se tomó la misma, su firma y el sello del Departamento de Justicia.
“Al finalizar cada mes deberá someter un informe de las declaraciones juradas tomadas durante el mismo, informe que deberá llegarme a través de la División de Investigaciones y Procesamiento Criminal.
“Para su mejor conocimiento de la ley, se le está incluyendo copia de la misma.”

 4 L.P.R.A. sec. 883.

 Orden Administrativa del Departamento de Justicia, Núm. 85-06 de 5 de agosto de 1985, pár. 1.

 íd.

 4 L.P.R.A. sec. 883; Orden Administrativa del Departamento de Justicia, Núm. 85-06, supra.

 Orden Administrativa del Departamento de Justicia, Núm. 85-06, supra.

 4 L.P.R.A. sec. 894.

 Por no estar en controversia si la nulidad contenida en la See. 8 de la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, 4 L.P.R.A. see. 894, es radical y absoluta o, en cambio, relativa, no entraremos a resolver si los defectos señalados en dicha sección acarrean la nulidad de las declaracio-nes juradas.

 Análogamente, existen otras instancias durante el procedimiento criminal —estatal y federal— que permiten la rectificación de defectos de forma. Así, por ejemplo, errores en las acusaciones sobre la fecha de ocurrencia del delito imputado o sobre el lugar en que el acto delictivo ocurrió se consideran defectos de forma, salvo que éstos constituyan un elemento esencial del delito imputado. Véanse: Reglas 38, 39, 40 y 42 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véanse, además: State v. Knoeppel, 785 P.2d 1321 (D. Haw. 1990); State v. Thompson, 543 So.2d 1132 (1989); State v. Knight, 764 S.W.2d 656 (1988); State ex reí. McGreggor v. Rigg, 109 N.W.2d 310 (1961); Pueblo v. Cancel Peraza, 106 D.P.R. 28 (1977); Pueblo v. González, 97 D.P.R. 541 (1969); Pueblo v. López Jiménez, 96 D.P.R. 132 (1968).

 Véase Apéndice de la Petición de certiorari, págs. 43-52. En específico, el agente Rivera Avilés declaró que su participación en la operación criminal de autos culminó alrededor de las 11:50 a.m. Asimismo, los agentes García Guevarra y Castro Parsons señalaron que su participación en dicha operación culminó a eso de las 1:20 p.m. y 1:23 p.m., respectivamente.