

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José Garay López<br>Leonardo de Jesús Valentín<br>Edgar Álvarez Pérez<br><br>Recurridos | Certiorari<br><br>2011 TSPR 66<br><br>181 DPR _____ |

Número del Caso: CC - 2009 - 903

Fecha: 3 de mayo de 2011

Tribunal de Apelaciones:

Región Judicial de Mayagüez Panel IX

Juez Ponente:

Hon. Carlos Rivera Martínez

Abogado de la Parte Peticionaria:

Lcdo. Nelson Vincenty Cappas

Oficina de la Procuradora General:

Lcda. Daphne M. Cordero Guilloty
Procuradora General Auxiliar

Materia: Criminal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico
          Recurrido                          Certiorari

          v.

     José Garay López,              CC-2009-0903
Leonardo de Jesús Valentín,
     Edgar Álvarez Pérez
          Peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor Rivera García


En San Juan, Puerto Rico, a 3 de mayo de 2011.

El presente recurso de *certiorari* nos brinda la oportunidad de examinar la naturaleza y alcance de las declaraciones juradas que autorizan los fiscales dentro de sus funciones ministeriales. Ello, a la luz de la incompatibilidad de funciones establecida en la Ley Núm. 205 de 9 de agosto de 2004, según enmendada, conocida como Ley Orgánica del Departamento de Justicia, 3 L.P.R.A. §§ 291 *et. seq.*, y en la Ley Núm. 7 de 2 de julio de 1987, según enmendada, conocida como Ley Notarial de Puerto Rico, 4 L.P.R.A. §§ 2001 *et. seq.* Específicamente, debemos resolver si tres

declaraciones juradas -prestadas por determinados agentes encubiertos durante el curso de una investigación- son admisibles en evidencia a pesar que dos de ellas no fueron firmadas por el fiscal autorizante y en la restante no se consignó la fecha y hora de autorización. A continuación esbozamos los antecedentes fácticos de mayor relevancia a la controversia que nos ocupa.

I

A raíz de una investigación realizada por el Negociado de Investigaciones Especiales del Departamento de Justicia, el 31 de octubre de 2008 el Ministerio Público presentó varias denuncias en contra del Sr. José Garay López, el Sr. Leonardo de Jesús Valentín y el Sr. Edgar Álvarez Pérez. En ellas les imputó la comisión del delito de soborno, 33 L.P.R.A. § 4890; infracciones al Artículo 3.2 (c) de la Ley Núm. 12 de 24 de julio de 1985, según enmendada, conocida como Ley de Ética Gubernamental, 3 L.P.R.A. § 1822; violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. § 2101 *et seq.*; y varias infracciones a la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como Ley de Armas de Puerto Rico. Las denuncias fueron sometidas ante el Tribunal de Primera Instancia en ausencia de los peticionarios.

Luego que el foro primario encontrara causa para el arresto de los imputados, el 12 de junio de 2009 comenzó

la celebración de la Vista Preliminar. Durante esta vista el Ministerio Público presentó como prueba las declaraciones juradas de los agentes encubiertos José A. Rivera Avilés, Gretchen Castro Parsons y Gabriel García Guevara. En estas declaraciones, prestadas el 8 de abril de 2008, se detallaron los hechos pertinentes sobre la comisión de los delitos imputados.

Acto seguido los imputados objetaron la presentación de las declaraciones juradas. Alegaron que éstas incumplían con los requisitos establecidos en la Ley Notarial de Puerto Rico, *supra*, y en su Reglamento, 4 L.P.R.A. § 2101 *et. seq.* En específico, adujeron que dos de las tres declaraciones juradas no fueron firmadas por el fiscal autorizante y, en cuanto a la declaración jurada restante, señalaron que ésta –aunque fue firmada- no fue fechada. Consecuentemente, arguyeron que las declaraciones juradas eran nulas toda vez que los errores de los cuales adolecían constituían defectos insubsanables, conforme a lo establecido en la Ley Notarial, *supra*, y su Reglamento, *supra*. Puntualizaron, que las referidas declaraciones eran inadmisibles en evidencia puesto que no habían sido prestadas válidamente dentro del término de 120 horas dispuesto en el Artículo 523 de la Ley de Sustancias Controladas, *supra*. 24 L.P.R.A. § 2523.

El Ministerio Público, por su parte, replicó a lo alegado por los imputados. A esos efectos, luego de

presentar como testigo al Fiscal Miguel A. López Birriel –funcionario público que autorizó las declaraciones juradas en controversia-, así como las copias certificadas de su Registro e Informe Mensual de Declaraciones Juradas, el Ministerio Público adujo que en horas de la mañana del 8 de abril de 2009 el fiscal López Birriel le tomó juramentó a los agentes encubiertos involucrados en la investigación criminal que dio origen al encausamiento criminal de autos. Por ello, contrario a lo alegado por los imputados, el Ministerio Público argumentó que los errores señalados eran subsanables mediante la presentación de prueba adicional y que las referidas declaraciones debían ser admitidas en evidencia.

Luego de evaluar la prueba presentada y de analizar los argumentos esgrimidos por ambas partes, el 23 de junio de 2008 el Tribunal de Primera Instancia emitió una resolución. En su dictamen, el foro primario indicó que ninguna de las declaraciones juradas presentadas por el Ministerio Público cumplió con las formalidades exigidas por la Ley Notarial de Puerto Rico, *supra*, y su Reglamento, *supra*, y que por ello adolecían de defectos insubsanables. Consecuentemente, el foro de instancia decretó su nulidad e indicó que eran inadmisibles en evidencia a tenor con el Artículo 523 de la Ley de Sustancias Controladas, *supra*.

Inconforme, el Ministerio Público presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En en el

recurso señaló que el Tribunal de Primera Instancia incidió al resolver que las declaraciones juradas eran nulas por adolecer de defectos insubsanables y que ello acarreaba su exclusión automática como evidencia sustantiva en contra de los imputados. Ello, según lo establecido en la Ley Notarial de Puerto Rico, *supra*, su Reglamento, *supra*, y el Artículo 523 de la Ley de Sustancias Controladas, *supra*.

Examinados los planteamientos de las partes, el 23 de septiembre de 2009 el Tribunal de Apelaciones dictó sentencia y revocó el dictamen recurrido. Al así hacerlo acotó que las tres declaraciones juradas en controversia, a pesar que adolecían de defectos, fueron autorizadas dentro de los deberes ministeriales del fiscal y no bajo sus deberes como notario. En atención a ello, el foro apelativo intermedio razonó que los defectos señalados no acarreaban la exclusión automática de las referidas declaraciones y que éstas no eran nulas puesto que los defectos de los cuales adolecían eran subsanables.

Cónsono con lo anterior, el Tribunal de Apelaciones expresó que los defectos señalados por los imputados fueron subsanados mediante la presentación del testimonio del fiscal López Birriel, así como las copias certificadas de su Registro e Informe Mensual de Declaraciones Juradas. En vista de ello, el foro apelativo intermedio concluyó que el Tribunal de Primera Instancia incidió al no admitir en evidencia las referidas declaraciones, ya que éstas

fueron autorizadas dentro del término establecido en la Ley de Sustancias Controladas, *supra*.

En desacuerdo con ese dictamen, el 26 de octubre de 2009 el señor Álvarez Pérez presentó un recurso de *certiorari* ante este Tribunal y señala la comisión del siguiente error:

> **Erró el Tribunal de Apelaciones al concluir que no procede la exclusión de las declaraciones juradas, ya que las omisiones de firmar y hacer constar la fecha de su otorgamiento se hicieron dentro de los deberes del cargo de fiscal y no en calidad de notario.**

Posteriormente, el 9 de abril de 2010 emitimos una resolución mediante la cual expedimos el auto de *certiorari* presentado por el imputado. Ambas partes han presentado sus respectivos alegatos. Por ello, contando con su comparecencia, procedemos a resolver.

II

**A. La Figura del Agente Encubierto**

La ola de criminalidad que fustiga a Puerto Rico constituye una de las preocupaciones mayores de nuestra ciudadanía. Uno de los males que debemos de tratar de detectar tempranamente y, si fuera posible, erradicar, es aquél del negocio ilícito de la venta de narcóticos. El uso de los cuales no sólo está destruyendo, literalmente, a la juventud, sino que también propicia la comisión de otros delitos tales como robos, escalamientos, asesinatos, prostitución, violaciones, y otros. La población debe estar consciente que el adicto es capaz de cualquier cosa en su desesperación por conseguir dinero para comprar la droga.

La imperiosa necesidad que tiene Puerto Rico de tratar de eliminar este mal de la sociedad, y en vista de que dichas transacciones, por lo general, se llevan a cabo en la secretividad, es que surgió la práctica de la utilización por parte de los organismos gubernamentales a cargo

de hacer cumplir las leyes, de los agentes encubiertos. Estos, como es sabido, son agentes de la Policía de Puerto Rico que, haciéndose pasar por traficantes o adictos, se "infiltran en esta subcultura" que desafortunadamente existe en nuestra sociedad. El agente se gana la confianza de esos ciudadanos con el propósito de acumular evidencia en contra de éstos. "El agente encubierto es un arma de identificación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método". (Citas omitidas). I. Pérez Vega, Las dos caras del agente encubierto, 43 Rev. Jur. U. Inter. P.R. 137 (2008).

El agente encubierto es un policía o funcionario público que se infiltra en organizaciones o grupos de personas que operan ilegalmente en el clandestinaje con el propósito de poder llevar a éstos ante el sistema de justicia de nuestro país para que respondan por sus actividades ilegales. En otras palabras, el agente encubierto se adentra en el corazón mismo de la conspiración y penetra en los más oscuros recintos del crimen organizado. Ello se logra cuando el agente se gana la confianza de estas personas y les hace creer que es uno de ellos, proceso que, de ordinario, toma un período de tiempo considerable. Véanse, Valle v. E.L.A., 157 D.P.R. 1 (2002); Pueblo v. Cruz Calderón, 156 D.P.R. 61 (2002); Pueblo v. Almodóvar, 109 D.P.R. 117 (1979); Pueblo v. Seda, 82 D.P.R. 719 (1961).

En ocasiones, a los agentes encubiertos les resulta fácil poder describir y precisar los nombres verdaderos y direcciones donde pueden ser localizadas las personas que llevan a cabo la conducta criminal clandestina. En otras

instancias, sin embargo, ello le resulta imposible; sólo pueden identificar a éstas mediante una descripción física certera o por sus apodos. Valle v. E.L.A., supra, pág. 22. Cuando ello ocurre los miembros de la agencia investigadora tienen que asegurarse de tomar todos los pasos necesarios para poder identificar, de forma certera y correcta, al delincuente que llevó a cabo la transacción delictiva con el agente encubierto. Para ello hay varias formas. Así, por ejemplo, los agentes supervisores del agente encubierto pueden: tomar fotos –a distancia- de la persona involucrada en el acto criminal; seguir al delincuente hasta su residencia y lugar de trabajo; lograr que el agente encubierto identifique a la persona; presentar como testigo al agente encubierto para que éste identifique en sala al delincuente. Íd.

Es evidente que esta práctica de investigación criminal ha resultado de gran beneficio para Puerto Rico. Ha permitido acusar y encarcelar a miles de traficantes de drogas durante los últimos años. Empero, la utilización de los agentes encubiertos en la guerra contra el crimen no deja de ser un tanto inquietante. Ello implica que un ciudadano puede ser acusado, condenado y sentenciado a prisión única y exclusivamente sobre la base del testimonio del agente encubierto, la cual –en muchas ocasiones- no ha sido corroborada en cuanto a los hechos esenciales. Pueblo v. Estrada, 150 D.P.R. 84 (2000); Pueblo v. Rivera Rodríguez, 123 D.P.R. 467 (1989); Pueblo

v. Sanabria Pérez, 113 D.P.R. 694 (1983).  Por tal razón, el testimonio de un agente encubierto debe ser examinado y escudriñado minuciosamente.  Pueblo v. Soto Zaragoza, 94 D.P.R. 350 (1967).  De esta forma se evita que sea uno estereotipado y que la libertad de personas inocentes sea puesta en riesgo.  Pueblo v. Almodóvar, supra.  Véanse, además, I.R. Valldejuli Pérez, El Agente Encubierto y el Tribunal Supremo de Puerto Rico, 44 Rev. Jur. U.P.R. 143 (1975); R.C. Donnelly, Judicial Control of Informants, Spies, Stool Pigeons and Agent Provocateurs, 60 Yale L.J. 1091 (1951); C. López-Baralt Negrón, Posición del Tribunal Supremo frente al testimonio único del Agente Encubierto, 37 Rev. Jur. U.P.R. 583 (1968).

En fin, habida cuenta de la enorme influencia que sobre el destino del encausado puede generar el testimonio del agente encubierto, y en reverencia a la libertad de los seres humanos con quienes interviene, se impone una aumentada exigencia y un mayor rigor en la estimación por las cortes de las actuaciones del agente encubierto. Pueblo v. Rosario Torres, 101 D.P.R. 840 (1973).

**B. Artículo 523 de la Ley de Sustancias Controladas**

En consideración al marco jurídico antes enunciado, y debido a que la memoria de los hechos delictivos observados y presenciados se deteriora con el transcurso del tiempo, el legislador adoptó el Artículo 523 de la Ley de Sustancias Controladas, supra.  Así, se estableció una precaución temporal de confiabilidad para las

declaraciones hechas por los agentes encubiertos producto de las investigaciones y operaciones realizadas. A esos efectos, el referido artículo prescribe lo siguiente:

> Todo personal de investigaciones que intervenga o participe como encubierto en una transacción de venta de drogas y sustancias controladas bajo las disposiciones de este capítulo, deberá prestar ante un Fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado la transacción de venta, una declaración jurada sobre su participación en la misma y los hechos pertinentes a ésta, a menos que se demuestre justa causa para una demora en someterla dentro del término antes indicado.

> Cuando el tribunal determinare en la vista preliminar que dicha declaración jurada no fue prestada, o que habiéndose prestado fuera del término de 120 horas no hubo justa causa para la dilación ni dicha declaración jurada ni el testimonio del agente encubierto podrán ser presentados en evidencia.

> En la determinación de justa causa se tomará en consideración, entre otros factores, el que la investigación que se lleve a cabo no hubiere concluido dentro del término no mayor de 120 horas antes indicado. 24 L.P.R.A. § 2523.

Como podemos apreciar, la norma antes reseñada exige que las declaraciones juradas prestadas por los agentes encubiertos sobre la actividad criminal a ser encausada bajo la Ley de Sustancias Controladas, *supra*, sean autorizadas por el funcionario público correspondiente –quien en la mayoría de las ocasiones es un fiscal- dentro de las 120 horas siguientes a la consumación de la transacción ilegal. De éstas no prestarse dentro del tiempo antes mencionado, el testimonio del agente encubierto no podrá ser presentado en evidencia.

Ahora bien, en las instancias en que el funcionario público correspondiente autorice las declaraciones fuera del término de 120 horas establecido por el Artículo 523 de la Ley de Sustancias Controladas, *supra*, el Ministerio Público deberá probar justa causa para la demora como condición para que sean admitidas en evidencia. Véanse, Pueblo v. Colón Ramos, 115 D.P.R. 357 (1984); Pueblo v. Rosario Torres, *supra*.

## C. Incompatibilidad entre funciones: Ministerio Público y Notariado

Como es sabido, el notario es el profesional de Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen sin perjuicio de lo dispuesto en las leyes especiales. 4 L.P.R.A. § 2002. "Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirles autoridad a los mismos". Íd. En virtud de estas responsabilidades es que en la esfera de los hechos el notario da fe de lo que ve, oye y percibe por sus sentidos. Como jurista autentica y formula un juicio de certeza que nutre de fuerza probatoria las declaraciones de voluntad de las partes en instrumentos y documentos públicos redactados conforme a las leyes. In re: Maldonado, 103 D.P.R. 523 (1975); S. Torres Peralta, El Derecho Notarial Puertorriqueño, Publicaciones STP, Inc., 1995, pág. 1.4.

Además, el notario autorizado puede ejercer su profesión dentro de toda la jurisdicción de Puerto Rico. En esa función disfrutará de plena autonomía e independencia, la ejercerá con imparcialidad, y estará bajo la dirección administrativa de este Tribunal por conducto de la Oficina de Inspección de Notarías. 4 L.P.R.A. § 2003.

Sin embargo, la Ley Notarial de Puerto Rico, *supra*, establece que el ejercicio de la notaría es incompatible con cualquier otro cargo público cuando media una prohibición a tales fines. 4 L.P.R.A. § 2004. Véase, además, In re: Corona Muñoz I, 141 D.P.R. 640, 646-647 (1996). A estos efectos, "[l]a doctrina reconoce que la incompatibilidad para ocupar dos (2) cargos públicos simultáneamente puede ser de derecho o de hecho. La primera, la incompatibilidad legal, presupone `la existencia de alguna norma legal que establezca la prohibición del ejercicio de la abogacía y, a la vez, otra actividad, función o cargo´". En otras palabras, "[p]or disposición expresa de ley se prohíbe el desempeño simultáneo de dos (2) puestos". In re: Corona Muñoz I, *supra*, pág. 647, *citando a* R. Bielsa, La Abogacía, 3ra ed., Buenos Aires, Ed. Abeledo-Perrot, 1960, pág. 181. La segunda, la incompatibilidad fáctica, se manifiesta "cuando ambos puestos tienen incompatibilidades o conflictos más o menos permanentes en sus deberes, no meramente casuales". In re: Corona Muñoz I, *supra*, pág.

647; <u>Pueblo *ex rel*. Arjona v. Landrón</u>, 57 D.P.R. 67, 70 (1940).

Cónsono con lo anterior, el Artículo 27 de la Ley Orgánica del Departamento de Justicia, *supra*, señala que "[l]a práctica privada de la abogacía y la notaría es incompatible con el puesto regular de abogado y fiscal del Departamento…". 3 L.P.R.A. § 293f. Esta incompatibilidad legal es reiterada –de forma específica– en el Artículo 70 del referido estatuto. "Se prohíbe a los fiscales y procuradores el ejercicio privado de la abogacía y notaría mientras ocupen sus respectivos cargos". 3 L.P.R.A. § 294v.

### D. Autoridad limitada de los Fiscales para ejercer funciones notariales

Como mencionamos, existe una clara incompatibilidad legal entre el cargo de fiscal y la profesión de notario. Ahora bien, por disposición especial de ley, a los funcionarios públicos y empleados del Departamento de Justicia se les permite tomar declaraciones juradas en el curso de sus investigaciones y trabajos ministeriales.

Así, el Artículo 27 de la Ley Orgánica del Departamento de Justicia, *supra*, especifica que "un abogado podrá ejercer la práctica notarial como parte de las funciones de su cargo, siempre que medie la autorización por escrito del Secretario". 3 L.P.R.A. § 293f. De igual forma, el Artículo 11 del referido estatuto autoriza a los funcionarios públicos del Departamento de Justicia a entrevistar testigos y tomarles

juramentos y declaraciones. Al así hacerlo, indica que "[e]l Secretario y los funcionarios y empleados en quienes delegue, llevarán a cabo las investigaciones que sean necesarias y adecuadas para el ejercicio de las facultades que le concede esta Ley y quedan autorizados para entrevistar a testigos y tomar juramentos y declaraciones…". 3 L.P.R.A. § 292h.

La autorización descrita en el párrafo anterior se concretiza en la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones de 12 de marzo de 1903, según enmendada, 4 L.P.R.A. §§ 881-899. Este estatuto también autoriza a los fiscales a tomar declaraciones y afidávits. 4 L.P.R.A. § 890. A esos fines, la profesora Torres Peralta ha señalado que

> Tanto los jueces como los fiscales ejercen funciones de naturaleza notarial, dentro del marco específico de la reglamentación particular que les aplica, **pero no quedan dentro de la cubierta de la Ley Notarial.** Nos explicamos.
>
> El 25 de febrero de 1982, el Tribunal Supremo emitió [una] resolución reglamentando el alcance de la facultad de los jueces para autorizar declaraciones y testimonios de autenticidad. Posteriormente, la Legislatura aprobó la [Ley Núm. 77 de 6 de julio de 1985, 4 L.P.R.A. 890, 892a], en la que reitera lo previamente dispuesto en la resolución indicada. El mismo estatuto les reconoce la misma facultad para autorizar testimonios y declaraciones de autenticidad sujetas a los criterios ahí indicados a los miembros del ministerio público.
>
> La [Ley Núm. 77, *supra*], vigente a esta fecha lee:
>
> "Los notarios, los jueces del Tribunal Supremo, los jueces del Tribunal de Primera Instancia, los jueces municipales, **los fiscales**, los jefes de departamento, los

tesoreros municipales podrán autorizar afidávits o declaraciones de autenticidad; pero solamente los notarios podrán autorizarlos cuando se refieren a hechos, actos o contratos de mero interés particular".

Conforme al estatuto indicado, plenamente vigente a esta fecha, los jueces pueden autorizar testimonios y declaraciones de autenticidad en el área de interés público, facultad que suelen ejercer vigorosamente. Por ejemplo, los magistrados toman juramentos en áreas tales como reconocimiento de hijos, celebración de matrimonios, diligenciamiento de órdenes de allanamiento, entre otros.

**Los fiscales, por su parte, ejercen su autoridad para tomar juramentos en el ejercicio de su función investigativa.**

**Debe quedar claro, sin embargo, que los jueces y fiscales no son notarios públicos. Su función está limitada a tomar testimonios y declaraciones de autenticidad, dentro del ámbito de la reglamentación vigente. Tal función, en sí delicada, no les convierte en notarios públicos.** (Énfasis nuestro). S. Torres Peralta, op. cit., págs. 5.8 - 5.9.

### E. Declaraciones juradas bajo la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*

La Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*, aparte de autorizar a los fiscales a ejercer ciertas funciones notariales, establece los requisitos aplicables a los documentos que se autorizan. Así, el Artículo 3 de la referida disposición legal dispone que toda declaración jurada autorizada conforme al referido estatuto se hará por escrito y será firmada por el declarante. 4 L.P.R.A. § 883.

Aparte de los requisitos esbozados, la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*, también les impone a los fiscales la obligación de remitirle a la oficina del Secretario de Justicia información sobre las declaraciones juradas prestadas ante ellos. 4 L.P.R.A. § 892a. En específico, dicho estatuto señala que los fiscales tienen que remitir un informe e índice mensual de los testimonios o declaraciones de autenticidad que autorizan no más tarde del décimo día calendario del mes siguiente al mes informado. 4 L.P.R.A. § 892a. Este informe, además, debe contener el número de orden de cada testimonio o declaración de autenticidad, los nombres de los otorgantes, los nombres de los testigos, la fecha de autorización y el objeto del acto. Íd. El afidávit o declaración que no esté inscrito en el Registro de Declaraciones o incluido en el índice correspondiente será nulo. 4 L.P.R.A. § 894.

Incluso, en consecución de las obligaciones impuestas por la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*, el 5 de agosto de 1985 el otrora Secretario de Justicia emitió la Orden Administrativa del Departamento de Justicia Núm. 85-06.[1]

---

[1] La Orden Administrativa del Departamento de Justicia Núm. 85-06, de 5 de agosto de 1985, complementa la Orden Administrativa Núm. 85-05, de 18 de julio de 1985. En ésta se atendieron -inicialmente- las obligaciones nacidas de la Ley Núm. 77 de 6 de julio de 1985, la cual enmendó la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*. Por su pertinencia, la reproducimos en su totalidad.

Esta orden delimitó el procedimiento que los fiscales deben seguir para la implementación adecuada de los deberes impuestos por la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*. A esos fines, la referida orden apuntala lo siguiente:

> Para que haya uniformidad en los procedimientos a seguirse para cumplir con la Ley Número 77, del 6 de julio de 1985, se instruye a los fiscales y procuradoras a observar las siguientes instrucciones:
>
> 1. En las declaraciones juradas el fiscal o procuradora deberá incluir, luego de la firma del declarante, lo siguiente:
>
>> "Declaración Número ___
>> Jurada y suscrita ante mí por _____, de las circunstancias personales arriba expresadas, hoy día ___ de _____ de 19__, a las ___ (a.m./p.m.)

---

"Con fecha de 6 de julio de 1985 entró en vigor la Ley Núm. 77 que enmienda las Secciones 4, 5, y 6a de la Ley de 12 de marzo de 1908, según enmendada, [conocida como Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones], para requerir de los fiscales, entre otros funcionarios, a llevar un registro de [afidávits] y declaraciones de autenticidad tomadas por los mismos y a rendir un informe.

Hasta tanto el Departamento de Justicia realice los arreglos pertinentes para la adquisición de los tomos requeridos por la Ley y cualquier otra gestión necesaria para instrumentar sus disposiciones, cada uno de los fiscales deberá dar número correlativo a las declaraciones juradas que hayan tomado a partir de la vigencia de la Ley y a cualquier otra declaración de dicha naturaleza que en lo sucesivo tomen.

Deberá, asimismo, llevar un registro particular de las declaraciones juradas, haciendo una anotación en el mismo de cada una de tales declaraciones, incluyendo el número, breve nota sobre el asunto donde se informe el nombre de los otorgantes y la naturaleza del acto autenticado, fecha en que se tomó la misma, su firma y el sello del Departamento de Justicia.

Al finalizar cada mes deberá someter un informe de las declaraciones juradas tomadas durante el mismo, informe que deberá llegarme a través de la División de Investigaciones y Procesamiento Criminal.

Para su mejor conocimiento de la ley, se le está incluyendo copia de la misma".

Cuando se utilicen los formularios de declaraciones juradas ya impresos, bastará con incluir el número de la declaración antes de la nota que aparece en la parte inferior del formulario y llenar los blancos que aparecen en ésta, adicionando la hora en que se toma la declaración jurada.

2. Al abrirse el Registro de Declaraciones Juradas, el fiscal o procuradora lo comenzará con la siguiente nota:

"En cumplimiento de la Ley Número 77, de 6 de julio de 1985, comienza el primer Libro y Registro de Declaraciones Juradas, ante el fiscal que suscribe, en _____, Puerto Rico, hoy ___ de _____ de 19___"

(Estampar sello del
Departamento de Justicia)

_____
Firma del Fiscal o
Procuradora

3. Las notas en el Registro de Declaraciones seguirán una secuencia numérica y se llevarán en la siguiente forma:

Declaración Número ___ de fecha _____.
"A las _____ (a.m./p.m.) de este día, don (doña) _____, de estado civil _____, de ___ años de edad, residente en _____, de ocupación _____, suscribe y jura ante mí declaración en relación con la investigación del caso (Nombre del imputado), por el delito de _____, hechos cometidos en (fecha)"

(Estampar sello del
Departamento de Justicia)

_____
Firma del Fiscal o
Procuradora

4. El libro debe abrirse en la fecha en que se juramentó la primera declaración, a partir del 6 de julio de 1985.

5. Las declaraciones juradas grabadas o tomadas en taquigrafía o estenotipia y luego transcritas a máquina, y certificadas por un taquígrafo o transcriptor, deberán también incluirse en el Registro de Declaraciones Juradas con su número correlativo a la fecha y hora en que se toman.

6. Terminado el libro se insertará una nota de cierre que diga:

"Concluye mi primer Registro de Declaraciones Juradas tomadas por mí, que consta de ___ folios y ___ declaraciones juradas. Este tomo corresponde al período comprendido entre (fecha de la 1ra. declaración) y (fecha de última declaración)".

"En _____, Puerto Rico, a ___ de _____ de 19___"

(Estampar sello del
Departamento de Justicia)

_____
Firma del Fiscal o
Procuradora

7. No más tarde del quinto día laborable de cada mes, los fiscales y procuradoras someterán al Secretario de Justicia el informe mensual sobre las declaraciones tomadas el mes anterior. Este informe se preparará en el formulario diseñado, en original y copia. El original se enviará al Secretario de Justicia. El fiscal retendrá copia para sus archivos. En caso de no haberse tomado declaración alguna durante el mes, se enviarán informes negativos. Los fiscales de Distrito y Jefes de Unidades velarán por el fiel cumplimiento de este requisito, en cuanto a los fiscales asignados a sus fiscalías y unidades.

8. La Oficina del Jefe de la División de Investigaciones y Procesamiento Criminal llevará récord de los informes rendidos y los conservará en archivo confidencial. Cualquier solicitud u orden del Tribunal para el descubrimiento de este informe será referida por el Fiscal de Distrito al Secretario de Justicia, por conducto del Jefe de la División.

9. Mensualmente el Jefe de la División informará al Secretario de Justicia el nombre de los fiscales y procuradoras que no cumplan con el requisito de preparación y envío de los informes, para la acción administrativa que el Secretario de Justicia entienda procedente.

10. El Departamento de Justicia proveerá un libro encuadernado con folios numerados para cada fiscal. El libro Registro de Declaraciones Juradas permanecerá en posesión y custodia del

Fiscal o Procuradora mientras éste o ésta desempeñe el cargo. Al renunciar, retirarse o cesar en el cargo, hará entrega del libro al Jefe de la División Criminal para custodia permanente del mismo.

11. Se proveerán a las Fiscalías y Unidades varios sellos de goma con el sello oficial del Departamento de Justicia para uso de los fiscales y procuradoras en el cumplimiento de la Ley Núm. 77[, *supra*,] que exige declaraciones e informes sellados. Los sellos de goma serán controlados por el Fiscal de Distrito o Jefe de Unidad, de tal forma que siempre haya por lo menos un sello disponible para uso de los fiscales y procuradoras en y fuera de horas laborables.

A la luz de la normativa y órdenes administrativas mencionadas, podemos colegir que las declaraciones juradas autorizadas por los funcionarios públicos y empleados del Departamento de Justicia bajo la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*, deben cumplir con determinados requisitos. A saber, las referidas declaraciones deben ser hechas por escrito[2] y contener: (a) el número de declaración asignado;[3] (b) el nombre del declarante;[4] (c) la firma del declarante;[5] y (d) la fecha y hora en que se autorizaron.[6] Además, so pena de nulidad,[7] estas declaraciones juradas deberán ser incluidas en el índice mensual e inscritas en el Registro de Declaraciones

---

[2] 4 L.P.R.A. § 883.

[3] Orden Administrativa del Departamento de Justicia, Núm. 85-06 de 5 de agosto de 1985, párrafo 1.

[4] Íd.

[5] 4 L.P.R.A. § 883; Orden Administrativa del Departamento de Justicia, Núm. 85-06, *supra*.

[6] Orden Administrativa del Departamento de Justicia, Núm. 85-06, *supra*.

[7] 4 L.P.R.A. § 894.

Juradas correspondiente; ambos preparados por el fiscal autorizante en cumplimiento con el referido estatuto y con las Órdenes Administrativas Número 85-05 y 85-06 reseñadas.

### III

En su recurso de *certiorari* el peticionario aduce que el Tribunal de Apelaciones erró al dictar sentencia, revocar el dictamen emitido por el Tribunal de Primera Instancia y concluir que no procede la exclusión de las declaraciones juradas, ya que éstas fueron autorizadas dentro de los deberes del cargo de fiscal y no en calidad de notario. En específico, el peticionario alega que el foro apelativo intermedio incidió al razonar que las referidas declaraciones no eran nulas, que los defectos de los cuales adolecen son subsanables mediante la presentación de prueba y que la existencia de éstos no acarrea la exclusión automática de las referidas declaraciones. No le asiste la razón.

Un análisis detenido y minucioso de la doctrina jurídica descrita revela, inicialmente, que la facultad de los fiscales para ejercer funciones notariales no proviene de la Ley Notarial de Puerto Rico, *supra*, ni de su Reglamento, *supra*. Más bien, estas funciones son autorizadas –de forma limitada– por la Ley Orgánica del Departamento de Justicia, *supra*, y por la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*.

Incluso, al señalar que todo personal de investigaciones que intervenga o participe como encubierto en una transacción de venta de drogas y sustancias controladas deberá prestar **ante un Fiscal** una declaración jurada sobre su participación, puede colegirse que el Artículo 523 de la Ley de Sustancias Controladas, *supra*, también faculta a los fiscales a ejercer funciones notariales. Como consecuencia de ello, y como bien razonó el Tribunal de Apelaciones, los empleados y funcionarios públicos del Departamento de Justicia entrevistan testigos, toman juramentos y autorizan declaraciones juradas como parte de sus deberes ministeriales y no en calidad de notarios. Por ende, la Ley Notarial de Puerto Rico, *supra*, y su Reglamento, *supra*, no son aplicables al caso de autos.

Del mismo modo, aun cuando las declaraciones juradas en controversia adolecen de defectos significativos -falta de firma del fiscal autorizante y ausencia de fecha y hora de autorización- entendemos que éstos constituyen defectos subsanables que pueden ser rectificados. Así, contrario a lo alegado por el peticionario, los defectos señalados en el caso de autos no acarrean la exclusión automática de las declaraciones juradas en controversia. En cambio, éstas podrán ser admitidas en evidencia si se presenta prueba -testifical, documental o científica- que rectifique los defectos señalados y demuestre que el evento o circunstancia en controversia, en efecto,

ocurrió. Véanse, además, Reglas 901 y 902 de Evidencia, 32 L.P.R.A. Ap. VI. Ello responde a que los únicos defectos que causan la nulidad de las declaraciones juradas que autorizan los funcionarios públicos y empleados del Departamento de Justicia son los contenidos en la Sección 8 de la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*. Es decir, el no incluir en el índice correspondiente las declaraciones juradas autorizadas; o no inscribirlas en el Registro de Declaraciones Juradas.[8]  4 L.P.R.A. § 894.

Además, es menester aclarar que la obligación de los funcionarios públicos y empleados del Departamento de Justicia de firmar las declaraciones juradas que autorizan no está contemplada en la Ley Orgánica del Departamento de Justicia, *supra*; en la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*; en la Ley de Sustancias Controladas, *supra*, ni en las Órdenes Administrativas 85-05 y 85-06 antes mencionadas. Este requisito emana, más bien, del propio acto jurídico; de la naturaleza de tomar y autorizar declaraciones juradas y de la importancia de mantener en alto la integridad y transparencia de los procedimientos –en esta ocasión investigativos- que realizan dichos funcionarios y empleados. Precisamente, por esta razón es que deben

---

[8] Por no estar en controversia si la nulidad contenida en la sección 8 de la Ley para la Toma y Registro de Declaraciones Juradas, Juramentos y Afirmaciones, *supra*, es radical y absoluta, o, en cambio, relativa, no entraremos a resolver si los defectos señalados en dicha sección acarrean la nulidad o anulabilidad de las declaraciones juradas.

observar un grado mayor de celo, cuidado y diligencia al ejercen sus funciones ministeriales, y cumplir cabalmente con los requisitos enunciados.

Por ello, colegimos que toda declaración jurada que no sea firmada por el fiscal que la autorice –aunque cumpla con todos los demás requisitos exigidos- adolecerá de un defecto subsanable y no podrá ser admitida en evidencia hasta que el defecto sea rectificado.  En efecto, entendemos que la norma aquí pautada constituye la mejor práctica y es la que le otorga mayor grado de confiabilidad a las funciones notariales limitadas que ejercen los funcionarios públicos y empleados del Departamento de Justicia a raíz de los estatutos anteriormente señalados.[9]

Así, pues, surge del expediente de autos que las tres declaraciones juradas en controversia fueron prestadas ante el fiscal López Birriel el 8 de abril de 2008 a las 10:30 a.m., 10:40 a.m., y 11:00 a.m., respectivamente.  En todas ellas se declaró con lujo de detalles la investigación y operación criminal realizada, la cual comenzó en horas de la mañana del 3 de abril de 2008 y

---

[9] Análogamente, existen otras instancias durante el procedimiento criminal –estatal y federal- que permiten la rectificación de defectos de forma.  Así, por ejemplo, errores en las acusaciones sobre la fecha de ocurrencia del delito imputado o sobre el lugar en que el acto delictivo ocurrió se consideran defectos de forma, salvo que éstos constituyan un elemento esencial del delito imputado.  Véanse, Reglas 38, 39, 40 y 42 de Procedimiento Criminal, 34 L.P.R.A. Ap. III, R.38, R.39, R.40 y R.42.  Véanse, además, State v. Knoeppel, 785 P.2d 1321 (1990); State v. Thompson, 543 So. 2d 1132 (1989); State v. Knight, 764 S.W.2d 656 (1988); Pueblo v. Cancel, 106 D.P.R. 28 (1977); Pueblo v. González, 97 D.P.R. 541 (1969); Pueblo v. López, 96 D.P.R. 132 (1968); State ex rel. McGreggor v. Rigg, 109 N.W.2d 310 (1961).

culminó en horas de la tarde del mismo día.[10] Luego, durante la celebración de la vista preliminar, el Ministerio Público presentó como prueba las referidas declaraciones con miras a que fueran admitidas en evidencia. Oportunamente, los imputados impugnaron las declaraciones juradas de los agentes encubiertos y adujeron que éstas eran inadmisibles en evidencia debido a que dos de ellas no estaban firmadas y la restante no contenía la fecha de autorización, defectos que catalogaron como insubsanables. El Ministerio Público, por su parte, presentó el testimonio del fiscal López Birriel -quien testificó respecto al acto de autorización- y copias certificadas de su Registro de Declaraciones Juradas y de su Informe Mensual.

Es preciso puntualizar que del Registro de Declaraciones Juradas se desprende el número de identificación de dichas declaraciones, un resumen de su contenido, el nombre de los declarantes, la fecha y hora en que se autorizaron, y la fecha y hora en que se consumó la transacción de drogas que originó el presente encausamiento criminal. Además, del Informe Mensual, el cual fue remitido a la Oficina del Fiscal General del Departamento de Justicia, surge una lista de las declaraciones juradas que se autorizaron durante el mes de

---

[10] Véase, Apéndice, págs. 43-52. En específico, el agente Rivera Avilés declaró que su participación en la operación criminal de autos culminó alrededor de las 11:50 a.m. Asimismo, los agentes García Guevarra y Castro Parsons señalaron que su participación en dicha operación culminó a eso de las 1:20 p.m. y 1:23 p.m., respectivamente.

abril de 2008. Esta lista contiene el número de identificación de las declaraciones juradas aquí en controversia, la fecha en que fueron autorizadas, el nombre de los declarantes y un síntesis de la naturaleza de las declaraciones.

En vista de lo anterior, y al igual que el Tribunal de Apelaciones, colegimos que el Ministerio Público presentó suficiente evidencia para subsanar los defectos señalados. El testimonio del fiscal López Birriel sobre las diligencias realizadas para juramentar las respectivas declaraciones y las copias certificadas de su Registro de Declaraciones Juradas y de su Informe Mensual constituyen suficiente evidencia en derecho que prueba la ocurrencia del acto impugnado, rectificando así los defectos identificados por los imputados.

Al ser ello así, y razonar que las declaraciones juradas en controversia fueron debidamente autorizadas, es forzoso concluir que éstas fueron prestadas dentro del término de 120 horas estatuido en el Artículo 523 de la Ley de Sustancias Controladas, *supra*. En conclusión, el Tribunal de Apelaciones no incidió al resolver como lo hizo y decretar la admisibilidad de las referidas declaraciones.

IV

Por los fundamentos enunciados, procede confirmar la sentencia dictada por el Tribunal de Apelaciones. En consecuencia, se devuelve el caso de autos al Tribunal de

Primera Instancia para la continuación de los procedimientos de la Vista Preliminar conforme con los pronunciamientos vertidos en esta Opinión.

Se dictará sentencia de conformidad.


                                        Edgardo Rivera García
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Recurrido

                v.

                                                    Certiorari
    José Garay López,              CC-2009-0903
Leonardo de Jesús Valentín,
    Edgar Álvarez Pérez
        Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 3 de mayo de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, confirmamos la sentencia dictada por el Tribunal de Apelaciones. Devolvemos los autos al Tribunal de Primera Instancia para la continuación de los procedimientos de Vista Preliminar conforme con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Concurrente.


                Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| o de Puerto Rico | |
| urrido | |
| v. | |
| ay López | |
| cionario | |
| o de Puerto Rico | |
| urrido | |
| v. | |
| de Jesús Valentín | 9-903 |
| icionario | |
| o de Puerto Rico | |
| urrido | |
| v. | |
| varez Pérez | |
| icionario | |

Opinión concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 3 de mayo de 2011

El resultado al que arriba hoy el Tribunal es correcto, pues las declaraciones juradas de los agentes encubiertos que presenciaron las alegadas transacciones ilegales del caso de autos, no debían ser excluidas de la evidencia que pretendía presentar el Ministerio Público. No obstante, debido a que el razonamiento expuesto por el Tribunal contiene serias deficiencias, me veo forzada a emitir una Opinión concurrente.

I.

Los hechos que generan el presente recurso de *certiorari* son sencillos. Durante la mañana del 3 de abril de 2008, tres agentes encubiertos realizaron una investigación en la que alegadamente participaron de una transacción de venta de sustancias controladas con los señores José Garay López, Leonardo de Jesús Valentín y Edgar Álvarez Pérez (en adelante "los peticionarios"). Posteriormente, el 8 de abril, los agentes encubiertos se reunieron con el fiscal Miguel A. López Birriel para prestar declaraciones juradas en las que relataron los hechos que podrían configurar varios actos ilegales. Todo ello culminó con la presentación de denuncias contra los peticionarios por la comisión de varios delitos, incluyendo bajo la Ley de Sustancias Controladas. 24 L.P.R.A. sec. 2101 *et seq*.

En la celebración de la vista preliminar, el Ministerio Público presentó en evidencia las declaraciones prestadas por los tres agentes encubiertos, sin embargo, la defensa objetó. Su fundamento fue la inobservancia del artículo 523 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2523, el cual requiere que en aquellas instancias en que agentes encubiertos intervengan en transacciones de venta de sustancias controladas, estos funcionarios presten una declaración jurada ante un fiscal dentro de las próximas 120 horas. La defensa alegó que no se habían hecho declaraciones juradas dentro del término exigido por el artículo 523 porque las únicas que existían —y que el

Ministerio Público deseaba utilizar— eran nulas debido a que adolecían de defectos insubsanables al amparo de la Ley Notarial. 4 L.P.R.A. sec. 2001 *et seq*. En dos de ellas los supuestos defectos consistían en la omisión de la firma del fiscal, mientras que la tercera no contenía la fecha en que se preparó. Sostuvo la defensa que entonces procedía excluir de la evidencia las referidas declaraciones juradas, según ordena el propio artículo 523.

Por su parte, el Ministerio Público presentó el testimonio del fiscal López Birriel, quien narró los detalles de la toma de las declaraciones juradas a los tres agentes encubiertos el día 8 de abril de 2008. Asimismo, se presentó copia certificada del Registro de Declaraciones Juradas y del Informe Mensual de Declaraciones Juradas del fiscal López Birriel, los cuales corroboraban que éste había tomado las referidas declaraciones dicho día.

Tras escuchar los argumentos de las partes, el Tribunal de Primera Instancia acogió la postura de los peticionarios y excluyó de la evidencia las declaraciones juradas. Mas tras la interposición de un recurso de *certiorari* por el Estado ante el Tribunal de Apelaciones, éste revoco la determinación recurrida y concluyó que las declaraciones juradas debían ser admitidas en evidencia. Inconformes, los peticionarios presentaron el recurso de autos ante esta Curia. Nuevamente, alegan que la Ley Notarial rige las formalidades de las declaraciones juradas que toman los fiscales del Departamento de Justicia. Por ello, estiman que las declaraciones juradas que presentó el Estado en la

vista preliminar sufren defectos insubsanables que las hacen nulas, por lo cual no se cumplió el artículo 523 de la Ley de Sustancias Controladas.

## II.

La verdadera controversia ante nosotros gira en torno al artículo 523 de la Ley de Sustancias Controladas. 24 L.P.R.A. sec. 2523. Como mencionamos anteriormente, esta disposición ordena que los agentes encubiertos que participen de transacciones de venta de sustancias controladas, acudan ante un fiscal dentro de las siguientes 120 horas para prestar una declaración jurada sobre los hechos pertinentes a la transacción. Con el fin de asegurar el cumplimiento de este mandato —y para proteger a los individuos contra falsas acusaciones— el artículo 523 impide que el Ministerio Público presente como evidencia las declaraciones juradas o testimonio de agentes encubiertos durante el encausamiento criminal de los delitos bajo la citada ley especial, cuando no se haya seguido el requerimiento de dicho artículo 523. *Id.* Ese debe ser el resultado, a menos que exista justa causa para prestar la declaración jurada ante un fiscal pasadas las 120 horas desde que ocurrió la transacción. *Id.*

Concretamente, el recurso ante nosotros requiere determinemos si las declaraciones juradas que presentó el Estado en la vista preliminar son admisibles en evidencia o deben ser excluidas en virtud del artículo 523. Nótese que no se cuestiona que, en efecto, los tres agentes encubiertos

que intervinieron en la alegada transacción de sustancias controladas se personaron ante el fiscal López Birriel, dentro del término de 120 horas, con el propósito de prestar sus declaraciones juradas. Tampoco se disputa que el fiscal preparó los documentos de las declaraciones juradas dentro del mismo tiempo. El núcleo de la controversia que atendemos es simplemente si los documentos preparados por el fiscal, y que fueran presentados como evidencia en la vista preliminar, son válidos. Ello ante las alegaciones de los peticionarios a los efectos de que las declaraciones juradas son nulas en virtud de la Ley Notarial.

### A.

Los señalamientos de los peticionarios, respecto a la aplicación de la Ley Notarial al caso de autos, son inmeritorios. En primer lugar, como parte de sus funciones investigativas, la Ley Orgánica del Departamento de Justicia autoriza a los fiscales del Estado a expedir citaciones y tomar declaraciones juradas. Art. 11, Ley Núm. 205 de 9 de agosto de 2004, 3 L.P.R.A. sec. 292h. A su vez, la Ley para la Toma y Registro de Declaraciones Juradas y Afirmaciones nombra a los fiscales como uno de los funcionarios que pueden "autorizar" declaraciones juradas. Ley de 12 de marzo de 1903, según enmendada, 4 L.P.R.A. sec. 890. Por otra parte, en ausencia de una autorización por parte del Secretario de Justicia, a los fiscales les está prohibido ejercer la práctica de la notaría. 3 L.P.R.A. sec. 293f; 4 L.P.R.A. sec. 2004.

De manera que cuando los fiscales toman declaraciones juradas durante sus investigaciones, como ocurrió en el presente caso, no están actuando bajo el poder que otorga la Ley Notarial a los abogados admitidos a la profesión de la notaría, sino al amparo de las facultades que poseen los fiscales del Departamento de Justicia en virtud de la ley orgánica de dicha agencia.  Por lo tanto, no podemos colegir que tales declaraciones están regidas por los postulados contenidos en la Ley Notarial.  El asunto no admite otra conclusión.

Ahora bien, ante la ausencia de criterios en la Ley Orgánica del Departamento de Justicia que establezcan formalidades para la toma de declaraciones juradas por los fiscales, es preciso consultar la Ley para la Toma y Registro de Declaraciones Juradas y Afirmaciones.[11]  Este estatuto requiere que las declaraciones juradas se hagan por escrito y sean firmadas por la persona que afirma la veracidad de su contenido.  4 L.P.R.A. sec. 883.  Así también, exige que los fiscales preparen un registro y un informe mensual sobre las declaraciones juradas que tomen y lo remitan al Secretario de Justicia.  4 L.P.R.A. secs. 892-892a.  En la citada ley sólo se concibe la nulidad de las

---

[11] El asunto será discutido en respuesta al razonamiento emitido por el Tribunal.  Sin embargo, advertimos que los peticionarios no presentaron ninguna alegación sobre posibles formalidades que debieran seguirse en virtud de la Ley para la Toma y Registro de Declaraciones Juradas y Afirmaciones. Ley de 12 de marzo de 1903, según enmendada, 4 L.P.R.A. sec. 890.  Los peticionarios se limitaron a alegar que las declaraciones eran nulas bajo las disposiciones de la Ley Notarial.  4 L.P.R.A. sec. 2001 *et seq*.

declaraciones juradas cuando éstas no se incluyen en el registro o el informe mensual.  4 L.P.R.A. sec. 894.  Sin embargo, la ley no exige que la declaración contenga la fecha en que se prestó, como tampoco ordena que se incluya la firma del fiscal.

La necesidad de incluir en el documento la fecha en la cual se toma la declaración jurada sólo nace de la Orden Administrativa Núm. 85-02, aprobada por el Secretario de Justicia a los fines de uniformar cómo los fiscales preparan las declaraciones juradas mientras implementan la Ley para la Toma y Registro de Declaraciones Juradas y Afirmaciones. Si bien la omisión de dicha información no puede tener el efecto de hacer nulo el documento, ya que no es ese el propósito de la orden administrativa y, mucho menos, de la ley, sigue siendo importante que la misma conste en el cuerpo de la declaración jurada que toma el fiscal.  Ello responde a la necesidad de que el documento sea uno fidedigno.  Por lo mismo se requiere la firma del fiscal a cargo de la preparación de la declaración jurada.  Tanto la nota del tiempo en que se prestó la declaración, como la firma del fiscal, brindan mayor confiabilidad al escrito.  A su vez, aumentan su valor probatorio, por ejemplo, cuando son requeridas por el artículo 523 de la Ley de Sustancias Controladas.  24 L.P.R.A. sec. 2523; *véase discusión infra*.

Por lo tanto, resulta forzoso concluir que las declaraciones juradas que el Ministerio Público presentó en evidencia —dos de las cuales no contenían la firma del

fiscal y una tercera que no tenía fecha— no son nulas como resolvió el Tribunal de Primera Instancia. En vista de la legislación aplicable al caso de autos, es evidente que no estamos ante un supuesto de nulidad. Los datos omitidos en las declaraciones juradas no acarreaban su exclusión automática como evidencia.

B.

De otra parte, aunque en su Opinión el Tribunal también concluye que las declaraciones juradas que presentó el Estado en la vista preliminar no debieron ser excluidas, allí se expone un razonamiento errado. La falla se hace evidente cuando el Tribunal discute el efecto que alegadamente tuvo la evidencia adicional que fuera presentada por el Ministerio Público, sobre los defectos identificados en las declaraciones juradas. Veamos.

En primer lugar, el Tribunal señala que aunque las declaraciones juradas del caso de autos adolecen de defectos, se trata de defectos subsanables que pueden ser rectificados. Acto seguido dispone que las declaraciones pueden ser admitidas en evidencia porque quedaron "rectificadas" y "subsanadas" mediante la presentación del testimonio del fiscal López Birriel y las copias certificadas de su Registro e Informe Mensual de Declaraciones Juradas. En otras palabras, el Tribunal estima que la evidencia presentada por el Estado corrige las omisiones de las declaraciones juradas. No estamos de acuerdo.

El testimonio y las copias certificadas ofrecidos por el Ministerio Público no plasman la firma del fiscal en las declaraciones juradas en las que se omitió. Tampoco pueden colocar una fecha en un documento que no la tenía. Los defectos señalados no se subsanan con el desfile de evidencia en los tribunales, sino mediante la preparación de documentos formales. Por eso se equivoca el Tribunal al disponer que el Estado "presentó suficiente evidencia para subsanar los defectos señalados". No hay duda de que la presentación de la evidencia que efectuó el Ministerio Público era necesaria, mas no por las razones que expone el Tribunal.

En el presente caso, el Estado venía obligado a presentar el testimonio del fiscal López Birriel y las copias certificadas del Registro e Informe Mensual porque los defectos identificados en las declaraciones juradas que se presentaron generaron incertidumbre sobre cuándo se tomaron —omisión de la fecha— y quién las tomó —omisión de la firma del fiscal. Adviértase que ambos elementos, es decir, *el momento* en que se tomaron las declaraciones y *la persona* que las tomó, deben quedar claramente evidenciados en el tribunal por la exigencia que impone el discutido artículo 523 de la Ley de Sustancias Controladas. Este ordena que las declaraciones se presten ante *un fiscal* y dentro de un periodo de *120 horas*. 24 L.P.R.A. sec. 2523.

De manera que la evidencia que presentó el Estado probó que las declaraciones juradas objeto de controversia habían sido tomadas por el fiscal López Birriel dentro de las 120

horas de haber ocurrido las supuestas transacciones de venta de sustancias controladas. Así establecieron que las declaraciones juradas cumplían con el artículo 523, y por lo tanto debían ser admitidas en evidencia aunque tuvieran defectos subsanables. No se trata de rectificar los defectos de las declaraciones mediante la presentación de evidencia adicional, como expone el Tribunal, sino de probar que se satisfizo el mandato del artículo 523.

                              III.

Por lo antes expuesto, estimo que las declaraciones juradas presentadas por el Ministerio Público son admisibles en evidencia, ya que son válidas y se prestaron conforme ordena el artículo 523 de la Ley de Sustancias Controladas. En este extremo, coincido con el Tribunal que procede entonces confirmar la determinación del Tribunal de Apelaciones, mediante la cual revocó aquélla emitida por el Tribunal de Primera Instancia. Empero, ante el razonamiento errado que utiliza el Tribunal, concurro con su resultado.

                    Anabelle Rodríguez Rodríguez
                         Juez Asociada